NO. 07-04-0029-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 24, 2005



______________________________




DOUBLE ACE, INC., MATTHEW POPE,


ALYSSA POPE WOMACK, AND DONNA POPE, APPELLANTS



V.



BENNIE DALE POPE AND MICHAEL DEARDORFF, APPELLEES




_________________________________



FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;



NO. 02-12-19019; HONORABLE HAROLD PHELAN, JUDGE



_______________________________




Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

OPINION


 Presenting 13 issues, Double Ace, Inc. appeals the judgment following a jury trial,
denying it any relief on its claims for damages and awarding Bennie Dale Pope and Michael
Deardorff damages and attorney's fees sought by their counterclaims against Double Ace,
Inc. Also, presenting 15 issues, Alyssa Womack, Matthew Pope, and Donna Pope
challenge the judgment denying them any recovery on their claims for damages and
awarding Bennie Dale Pope and Michael Deardorff damages on their counterclaims. 
Based on the rationale herein, we affirm in part and reverse and remand in part.

 While married to Donna Pope, Bennie was engaged in farming operations. After
consultation with an attorney, Bennie and Donna decided to organize a corporation to be
operated under Bennie's management, in conjunction with Bennie's farming operations. 
Donna agreed that Bennie would manage Double Ace as its General Manager but that the
stock of the corporation would be held by Donna as trustee for their minor children,
Matthew Pope and Alyssa Pope (Womack). At the first meeting of the Board of Directors
of Double Ace on October 10, 1991, Bennie was elected General Manager and Donna was
elected President and Secretary/Treasurer. Also, 500 shares of stock were issued to
Donna as custodian and natural guardian for each minor child, making a total issue of 1000
shares. Thereafter, the Corporation commenced its farming operations under Bennie's
management. In 1997, Deardorff was elected as President and Director to assist Bennie. 
At that time, Donna signed corporate minutes and stock a certificate transferring 500
shares of stock to Deardorff. Other enabling documentation was signed by Donna. 
Although Double Ace prospered, Bennie's personal farming operations were not successful
and he was forced to file bankrputcy in 2000. The bankruptcy action was followed by
Bennie and Donna's divorce in 2002. 

 Before we address the contested issues, we first note two portions of the judgment
which are not challenged by any party. Among other things, the judgment of the trial court
declared that Double Ace owned the machinery and equipment described on exhibits
attached to the judgment. In addition, the judgment decreed that all stock issued by Double
Ace was issued to be held in trust for the benefit of Alyssa Pope Womack and Matthew
Pope and that they are now the beneficial owners of the stock. Because no party presents
any assignment of error or challenge to these declarations, those two portions of the
judgment will be affirmed.

 Because the multiple parties present common and diverse claims and counterclaims
by broad pleadings and 28 issues with numerous sub-issues, before addressing the action
in the trial court and the issues, we first outline the claims in broad form.

CLAIMS


 Double Ace v. Bennie. Asserted (1) breach of contract, (2) fraud, civil
conspiracy, breach of fiduciary duty and conversion, (3) declaratory judgment 
regarding ownership of transferred stock and property, (4) action for
accounting, (5) action to recover on sworn account for monies withdrawn
from the corporation's bank account, and (6) conspiracy with Otis Pope;

 


 Double Ace v. Deardorff. Asserted (1) fraud, civil conspiracy, and
conversion, (2) declaratory judgment regarding ownership of transferred
stock and property, (3) action for accounting, (4) action to recover on sworn
account for monies withdrawn from the corporation's bank account;




 Alyssa and Matthew v. Bennie and Deardorff. Alyssa and Matthew joined
the suit in their individual capacities for the only purpose of establishing their
sole ownership in the stock of Double Ace;


 COUNTERCLAIMS
 


 Bennie v. Double Ace, Alyssa, Matthew, and Donna. (1) Alleged (1)
wrongful termination, (2) promissory estoppel, (3) quasi estoppel, (4) unjust
enrichment, and (5) quantum meruit.



 Deardorff v. Double Ace. Alleged a cause of action for indemnity.


 Deardorff v. Alyssa, Matthew, and Donna. Alleged (1) fraud, (2)
conversion, and (3) civil conspiracy.


 Deardorff v. Alyssa and Matthew. Alleged a cause of action for theft. 



 Upon the close of the evidence, contending there was no evidence to support the
submission of the elements of any questions to the jury regarding the claims of Double Ace
against Bennie, Bennie's counsel moved for instructed verdict. (2) Also, counsel for Deardorff
adopted Bennie's argument and moved for instructed verdict on the same grounds. After
granting Bennie and Deardorff's motions for instructed verdict, and completion of the
charge conference, the trial court submitted the charge to the jury. By its verdict, the jury
found: (3)


 Bennie Deardorff

 (1) Bennie was the General Manager of (7) Donna part of conspiracy;

 Double Ace;

 

 (2) Double Ace failed to comply with the (8) Matthew part of conspiracy; 

 agreement; 


 (3) Donna, Matthew and Alyssa part of (9) Alyssa part of conspiracy;

 conspiracy that caused damages; 


 (4) Bennie relied on the agreement to his (10) Damages of $5000 past and

 detriment; $5000 future;


 (5) Damages of $160,000; (11) Finding of malice;


 (6) Awarded attorney's fees for a total (12) $1,000 exemplary damages; 

 of $48,000 through Supreme Court. 

 (13) Became a Director in 1997;


 (14) Became President in 1997;


 (15) Made a party because he had

 been a Director/Officer;


 (20) Awarded attorney's fees for a

 total of $66,000 through the

 Supreme Court.



Based on the instructed verdicts and jury findings, the trial court rendered judgment that


 



 Double Ace take nothing against Bennie and Deardorff;

 Bennie recover his damages of $160,000, plus interest and attorney's
fees from Double Ace, Matthew Pope, Alyssa Womack, and Donna
Pope, jointly and severally;

 Deardorff recover his damages of $11,000 plus interest and attorney's
fees from Double Ace, Matthew Pope, Alyssa Womack, and Donna
Pope, jointly and severally;
 Declared Double Ace to be the owner of the machinery and
equipment described in exhibits attached to judgment; and

 Decreed that all Double Ace stock was issued to be held in trust for
Alyssa Pope Womack and Matthew Pope, and that they are the
beneficial owners of the stock.




Issues of Donna Pope (4)



 Proceeding pro se, by issue 11A, Donna contends the trial court erred in failing to
give her at least 45 days notice of the trial setting on the counterclaims filed against her and
others by Bennie and Deardorff. We agree.

 Although this action was commenced by Double Ace, Alyssa, and Matthew on
December 18, 2002, by their separate counterclaims, Bennie and Deardorff did not make
Donna a party or seek any relief as to Donna until Deardorff named her in his amended
counterclaim filed September 29, 2003, and Bennie named her in his amended
counterclaim filed October 15, 2003. Counsel for all parties, except Donna, attended a
pretrial conference on October 17, 2003. During the pretrial conference, Bennie's counsel
announced to the court that because Donna had not been timely served, he would ask for
a severance and a separate trial as to Donna. After hearing comments from all counsel,
the trial court observed:

 I think there is no point playing games on that. We know that she is the one
that-that's driving the lawsuit; and, unless she is willing to come in and-and
submit to the answer or-if she wants it tried the 27th, she needs to get in here
now, because I'm not going to try this case twice, same facts.



Following comments by counsel, the court concluded its remarks by stating:



 But the only thing that is going to keep us from trying it then is Ms. Pope and
whatever position-if she wants her time to answer, I'm not telling her to give
up any rights, but-except the right to try this on the 27th if she wants it. 

 


The pretrial conference then concluded without any definitive action regarding notice to
Donna of the setting for October 27, 2003.

 According to the clerk's record, Donna filed motions to transfer venue and answers
to the counterclaims of Bennie and Deardorff at 11:00 a.m. on October 23, 2003. (5) When
the case was called for trial on October 27, Donna did not appear in person or by counsel. 
Bennie's counsel did not move for severance, but instead presented a plea arguing special
circumstances existed. After noting that no motion for continuance had been filed by any
party or Donna, the court proceeded to empanel the jury. (6)

 Citing In re Estate of Crenshaw, 982 S.W.2d 568 (Tex.App.--Amarillo 1998, no pet.),
Donna contends the trial court erred in commencing the trial with less than 45 days notice. 
See Tex. R. Civ. P. 45. We held where the Rules of Civil Procedure apply, the
requirements of Rule 245 must be met and concluded, "[t]he record affirmatively shows that
James did not have the required 45-day notice to which he was entitled." Crenshaw, 982
S.W.2d at 571. Here, too, the record affirmatively shows that Donna did not have the
required 45 days notice provided by Rule 245. In response, Bennie and Deardorff argue
the test set out in Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124 (1939),
is controlling. However, we are not concerned with these factors because a party who has
been denied due process through lack of notice of a trial setting satisfies the first Craddock
factor and does not have to meet the remaining requirements to be entitled to a new trial. 
See Lopez v. Lopez, 757 S.W.2d 721, 722-23 (Tex. 1988). Issue 11A is sustained. Our
disposition of this issue pretermits our consideration of issue 10.


Issues of Double Ace, Inc.


Instructed Verdict


 By its 12th issue, Double Ace contends the trial court erred in granting the motions
for instructed verdict on its first, second, third, and fifth causes of action presented by
Bennie and Deardorff. Among other contentions, citing Intermarque Automotive Products,
Inc. v. Feldman, 21 S.W.3d 544 (Tex.App.--Texarkana 2000, no pet.) and Lesikar v.
Rappeport, 33 S.W.3d 282 (Tex.App.--Texarkana 2000, pet. denied), Double Ace argues
that as officers of the corporation, Bennie and Deardorff had the burden of proof to
establish the fairness of their transactions with the Corporation. Focusing our analysis on
the first and second causes of action which alleged claims for breach of contract, breach
of fiduciary duties, and fraud, we agree.

 Standard of Review

 When reviewing an instructed verdict, we must determine whether there is any
evidence of probative force to raise a fact issue on the material questions presented. 
Szczepanik v. First Southern Trust Co., 883 S.W.2d 648, 649 (Tex. 1994). We must
consider all the evidence in the light most favorable to the party against whom the verdict
was directed, disregarding all contrary evidence and inferences and giving the losing party
the benefit of all reasonable inferences created by the evidence. Id. If there is any
conflicting evidence of probative value on any theory of recovery, an instructed verdict is
improper and the case must be reversed and remanded for jury determination of that issue.
 Id. An instructed verdict is proper when (1) the opponent's pleadings are insufficient to
support a judgment; (2) the evidence conclusively proves a fact that established a party's
right to judgment as a matter of law; or (3) the evidence offered on a cause of action is
insufficient to raise an issue of fact. Rudolph v. ABC Pest Control, Inc., 763 S.W.2d 930,
932 (Tex.App.--San Antonio 1989, writ denied). We must affirm an instructed verdict if the
record discloses a ground that establishes, as a matter of law, the movant was entitled to
judgment, even though the ground was not embodied in the motion for instructed verdict. 
Gonzales v. Willis, 995 S.W.2d 729, 740 (Tex.App.--San Antonio 1999, no pet.).

 The evidence revealed multiple transactions, too numerous to detail, including 
corporate checks, withdrawals, loans, and payments over the years which involved Bennie
or Deardorff while Bennie was acting as General Manager and Deardorff was acting as
President and Director. Bennie and Deardorff do not contend they did not serve as officers,
but contend, although the evidence demonstrated that transfers and payments had been
made, Double Ace introduced no evidence to show the transactions were unauthorized or
inappropriate. The motion sought an instructed verdict on the ground that Double Ace
provided no evidence of any impropriety in any of the transactions listed on the referenced
exhibit. However, because transactions between officers or directors of a corporation are
subject to strict scrutiny, as former officers, Bennie and Deardoff had the burden of
establishing the fairness of the transactions to the Corporation. See Popperman v. Rest
Haven Cemetery, Inc., 162 Tex. 255, 345 S.W.2d 715, 717 (1961).

 Since transactions between Bennie and Deardorff, as fiduciaries, are presumptively
fraudulent, they had the burden to introduce evidence to establish the fairness of the
transactions in which they were involved. Lesikar, 33 S.W.3d at 298. See also Willis v.
Donnelly, 118 S.W.3d 10, 34 (Tex.App.--Houston [14th Dist.] 2003, no pet.) ( holding the
trial court did not misplace the burden of proof that a "profiting fiduciary has the burden to
prove questioned transactions were fair, honest, and equitable."). Considering the
evidence in accordance with the appropriate standard of review and the imposition of the
burden of proof, in the absence of any pleading and evidence that the corporate bylaws
provided otherwise, we conclude Double Ace presented sufficient evidence to raise fact
issues as to the subject transactions, and the trial court erred in granting the instructed
verdict. Issue 12 is sustained.

 Our holding that the trial court erred in granting the instructed verdict requires that
the judgment that Double Ace take nothing against Bennie and Deardorff be remanded for
new trial. We must now decide whether such determination requires that the judgment
awarding Bennie and Deardoff damages on their counterclaims be reversed.

 Rule 44.1(b) of the Texas Rules of Appellate Procedure provides:

 (b) Error Affecting Only Part of Case. If the error affects part of, but not all,
the matter in controversy and that part is separable without unfairness to the
parties, the judgment must be reversed and a new trial ordered only as to the
part affected by the error. The court may not order a separate trial solely on
unliquidated damages if liability is contested. 


Bennie and Deardorff's counterclaims are considered as compulsory counterclaims under
Rule 97(a) of the Texas Rules of Civil Procedure. Also, we note Double Ace, Alyssa,
Matthew, and Donna do not assign any error to the determination of their joint and several
liability fixed by the judgment for damages sustained by Bennie and Deardorff. 

 In Otis Elevator Co. v. Bedre, 776 S.W.2d 152, 152-53 (Tex. 1989), the Court held
a partial reversal and remand was not proper unless the issues are severable and,
consequently, it reversed the judgment of the court of appeals which ordered a partial
remand. Later, in Prati v. New Prime, Inc., 949 S.W.2d 552, 558 (Tex.App.--Amarillo 1997,
writ denied), having sustained only two points, we reversed and remanded the case for new
trial. Accordingly, we conclude it would be improper to sever the claims of Double Ace from
the counterclaims asserted by Bennie and Deardorff. (7) Therefore, our consideration of the
remaining issues presented by Double Ace is not necessary.

Issues of Alyssa Womack and Matthew Pope


 By their first and second issues, Alyssa and Matthew contend the trial court erred in
failing to instruct the jury on the correct definition of civil conspiracy. We disagree.

 Jury charge error is reviewed under an abuse of discretion standard. Texas Dep't
of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). A proper instruction assists the
jury, accurately states the law, and finds support in the pleadings and evidence. United
Servs. Auto. Ass'n v. Brite, 161 S.W.3d 566, 577 (Tex.App.-San Antonio 2005, pet. filed). 
Here, although the definition in the charge somewhat differs from the definition submitted
by Double Ace, Alyssa, Matthew, and Donna, it does not constitute a misstatement of the
law that would result in an improper verdict. Furthermore, the trial court has great discretion
regarding the manner in which the jury is charged, so long as the charge properly submits
the issues that control the disposition of the case. See id.; Campbell v. C.D. Payne and
Geldermann Sec., Inc., 894 S.W.2d 411, 420 (Tex.App.--Amarillo 1995, writ denied). 
Concluding that the trial court did not abuse its discretion, their first and second issues are
overruled.

 By their third issue, Alyssa and Matthew contend the agreement with Bennie was not
sufficiently specific to alter the employment at-will relationship between Bennie and Double
Ace, as a matter of law. We disagree.

 As a bar to recovery, Bennie's status as an at-will employee would have constituted
an affirmative defense. Crow v. Rockett Special Util. Dist., 17 S.W.3d 320, 330 (Tex.App.--
Waco 2000, pet. denied). Because Alyssa and Matthew did not file an answer or other
pleading in response to Bennie's counterclaims, they waived the argument asserted here. 
Tex. R. Civ. P. 94; Komet v. Graves, 40 S.W.3d 596, 602 (Tex.App.-San Antonio 2001, no
pet.). Accordingly, their third issue is overruled.

 By issue four, Alyssa and Matthew contend the jury findings to questions one, two,
four, five, and six were against the great weight and preponderance of the evidence. Then,
without specifying the challenged questions by number, by issue twelve, Alyssa and
Matthew contend the jury findings that (A) they were part of a conspiracy that damaged
Deardorff, (B) Deardorff suffered $10,000 in damages as a result of such conspiracy, (C)
Deardorff's harm resulted from malice, and (D) Deardorff suffered $1,000 in damages as a
result of any malice were also against the great weight and preponderance of the evidence. 
We disagree.

 Bennie had the burden of proof on questions one, two, four, five, and six. Similarly,
Deardorff also had the burden to prove the challenged findings applicable to his
counterclaim. The proper challenge to jury findings, where, as here, Alyssa and Matthew 
did not have the burden of proof, is by a no evidence or factually insufficient evidence
standard. See Calvert, " No Evidence " and "Insufficient Evidence" Points of Error, 38 Tex.
L. Rev. 361, 364-68 (1960). Conversely, where an appellant challenges a jury verdict on
issues which he had the burden of proof, the standard on appeal is whether the findings
were against the great weight and preponderance of the evidence or should be reversed as
a matter of law. See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264,
275-76 (Tex.App.--Amarillo 1988, writ denied). Moreover, the issue is not developed by
argument. See Howell v. Murray Mortg. Co., 890 S.W.2d 78, 80 (Tex.App.-Amarillo 1994,
pet. denied), and Tex R. App. P. 38.1(h). The issues are overruled. 

 By issues five and eight, Alyssa and Matthew contend the trial court erred in granting
judgment jointly and severally against them for Bennie and Deardorff's attorney's fees. We
disagree. 

 By their counterclaims, Bennie and Deardorff sought to recover attorney's fees 
against Double Ace, Alyssa, and Matthew. Alyssa and Matthew argue, absent statutory
authority, no legal basis exists for such recovery. However, any claimed deficiency in the
pleadings should have been specifically pointed out by exception in writing and brought to
the attention of the trial court as provided by Rule 90 of the Texas Rules of Civil Procedure. 
Because Alyssa and Matthew did not present their objections to the trial court in writing, the
issues are not preserved for our review. See National Farmers Union Property and Cas. Co.
v. Degollado, 844 S.W.2d 892, 900 (Tex.App.-Austin 1992, writ denied); Tex. R. Civ. P. 67;
Rapp v. Felsenthal, 628 S.W.2d 258, 259 (Tex.App.-Fort Worth 1982, writ ref'd n.r.e.). See
also Gulf Ins. Co. v. Vantage Properties, Inc., 858 S.W.2d 52, 55 (Tex.App.--Houston [14th
Dist.] 1993, writ denied).

 By issues six and seven, including multiple sub-parts, Alyssa and Matthew contend
there was no evidence, or the findings were against the great weight and preponderance
of the evidence to support the jury finding that Deardorff was made a party to the underlying
suit by reason of his being or having been a director and officer of Double Ace. However,
by their statement of facts, (8) Alyssa and Matthew acknowledge Deardorff testified he was an
employee and officer of Double Ace and, the Corporation, including Alyssa and Matthew,
sought to impose fiduciary duties upon him as an officer and employee of the Corporation. 
Moreover, but for such relationship, Deardorff would not have been a proper party to the suit
for breach of fiduciary duties. Issues six and seven are overruled.

 By issues 7B and 7C, Alyssa and Matthew contend the trial court erred in submitting
jury question 20 pertaining to Deardorff's attorney's fees because the court failed to
conditionally submit the questions requested by them. However, these issues are not
developed by argument or discussion in the brief and, the basis for conditional submission
is not explained. We conclude the issue does not present the argument clearly and
concisely as required by Rule 38.1(h) of the Texas Rules of Appellate Procedure. See
Heard v. Moore, 101 S.W.3d 726, 730 (Tex.App.--Texarkana 2003, pet. denied). Moreover,
Alyssa and Matthew have not demonstrated the trial court acted without reference to any
guiding principles and abused its discretion. Texas Dept. of Human Services v. E.B., 802
S.W.2d 647, 649 (Tex. 1990). Issues 7B and 7C are overruled. 

 By issue nine, Alyssa and Matthew contend the trial court abused its discretion in
sustaining objections to Matthew's requests for production and in denying Double Ace,
Alyssa, Matthew, and Donna's motion to compel production. Since no party challenges the
relief sought by Matthew as to the corporate stock and that the corporation owned the
machinery and equipment described in the judgment, our disposition of this appeal renders
this issue moot and our consideration is pretermitted. See Tex. R. App. P. 47.1.

 By issues 13 and 14, Alyssa and Matthew contend the trial court erred in allowing the
testimony of Beatrice Carr and Aubrey Jan Fouts and any testimony regarding
compensation Bennie may have received as General Manager of Double Ace because
Bennie failed to timely disclose such information prior to trial as required by Rule 194.3 of
the Texas Rules of Civil Procedure. We disagree.

 Our review of the record reveals that no requests for disclosure were made on behalf
of Alyssa and Matthew. (9) Further, in order to preserve a complaint for appellate review, a
party must present to the trial court a timely request, objection, or motion, state the specific
grounds thereof, and obtain a ruling. Tex. R. App. P. 33.1(a)(1). Alyssa and Matthew did
not object to the alleged errors at trial. Therefore, issues 13 and 14 present nothing for
review and are overruled.

 By issue 15, Alyssa and Matthew contend the trial court erred in failing to grant a
mistrial after Bennie's counsel launched a direct attack on counsel for Double Ace. We
disagree.

 During cross-examination, Bennie's counsel questioned Alyssa regarding whether
counsel for Double Ace was the "driving force" behind the lawsuit. Counsel's objection to
the line of questioning as an improper attack in "violation of the code of conduct and the
rules of ethics" was overruled. Bennie's counsel followed by asking, "Did you know that the
lawyer that you have been following his direction has been suspended twice"? Counsel
immediately objected again and requested the jury be instructed to disregard the comment. 
The court sustained. Bennie's counsel replied, "Your honor, I am prepared to prove it, and
that is relevant to this case." Counsel objected for a third time and the jury was instructed
to disregard the last question. 

 Counsel for Alyssa and Matthew did not object to any of Bennie's counsel's
statements complained of on appeal. See Tex. R. App. P. 33.1(a)(1). See also Checker
Bag Co. v. Washington, 27 S.W.3d 625, 643 (Tex.App.-Waco 2000, pet. denied) (noting the
same standard that applies to an improper attack during jury argument also applies to an
improper question). However, an objection is not required to preserve error if the error is
deemed to be incurable. Otis Elevator Co. v. Wood, 436 S.W.2d 324, 333 (Tex. 1968). 
Although unwarranted attacks against the integrity of counsel are generally considered to
be incurable, this rule is not absolute. See, e.g., Checker Bag Co., 27 S.W.3d at 643. In
fact, instances of incurable error are rare. NationsBank of Texas, N.A. v. Akin, Gump,
Hauer & Feld, L.L.P., 979 S.W.2d 385, 399 (Tex.App.-Corpus Christi 1998, pet. denied). 
The test for incurable error is whether the comments considered in their proper setting, were
reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by
counsel or an instruction by the court, or both, could not eliminate the probability that it
resulted in an improper verdict. Cooper Tire & Rubber Co. v. Mendez, 155 S.W.3d 382, 410
(Tex.App.--El Paso 2004, pet. filed). Alyssa and Matthew must prove the probability the
improper comments caused harm is greater than the probability the verdict was grounded
upon the proceedings and the evidence. Tex. Employers' Ins. Ass'n v. Guerrero, 800
S.W.2d 859, 865 (Tex.App.--San Antonio 1990, writ denied).

 In the present case, the comments were directed at counsel for Double Ace, not
counsel for Alyssa and Matthew. Further, the remark was merely that opposing counsel had
been "suspended." No reference was made regarding the suspending regulatory body or
to any instance of wrongful conduct which may have led to the claimed suspension. We
conclude the remarks were not harmful to Alyssa and Matthew and assume any harm was
cured as to them by the instruction of the trial court. Moreover, absent preservation of error
by objection, issue 15 presents nothing for review and is overruled.

Disposition


 Accordingly, having overruled all of Alyssa and Matthew's issues, we affirm those
portions of the judgment ordering and decreeing that:

 (1) all stock issued in Double Ace, Inc. was issued to be held in trust for the
benefit of Alyssa Pope Womack and Matthew Pope and declaring them the
sole beneficial stockholders of Double Ace, Inc; 

 (2) the personal property described in Plaintiff's exhibits P-16, P-17, and P-18
attached to the judgment is the property of Double Ace, Inc.; 

 (3) except as provided in (1) and (2) above, (10) that Alyssa Pope Womack and
Matthew Pope take nothing against Bennie Pope and Michael Deardorff;

 (4) Bennie Dale Pope recover from Alyssa Womack Pope and Matthew Pope,
jointly and severally, $160,000 with prejudgment interest of $4,418.40 and his
attorney's fees found by the jury; and

 (5) Michael Deardorff recover from Alyssa Womack Pope and Matthew Pope,
jointly and severally, his damages in the amount of $11,000 and his attorney's
fees as found by the jury.


In addition, having sustained Donna's issue 11A and Double Ace's issue 12, in all other
respects, the judgment of the trial court is reversed and the cause is remanded for further
proceedings.

 Don H. Reavis

 Justice



1. Donna Pope was joined as a third-party defendant by counterclaims.
2. Counsel argued that "What we have are a conglomeration of convoluted allegations
in a petition that don't-don't allege, even, the elements of any of the causes of action that
are asserted, and there is not one shred of evidence to support the elements even if they
had alleged it."
3. The numbers correspond to the jury questions.
4. The notice of appeal signed by counsel for Double Ace, Inc. and Alyssa Womack
and Matthew Pope was prepared to also include Donna Pope and was signed by her pro
se. Also, the brief filed by counsel for Alyssa and Matthew was also signed by Donna, pro
se, and presented the issue for Donna regarding Tex. R. Civ. P. 245, which was not
common with Alyssa and Matthew's contentions. Also, in reviewing another part of the
record, we note that counsel for Double Ace prepared at least one pleading for Donna's
signature. While pro bono legal services are encouraged, counsel should exercise due
care to avoid the presentation of an ambiguous status regarding an attorney-client
relationship. We express no opinion as to the propriety of the preparation of a pleading or
an appellate brief for a pro se party by an attorney for a party allied to the pro se party. 
5. The record does not show when Donna was served with citation on the 
counterclaims.
6. The clerk's record does not include a copy of the citation served on Donna
concerning Bennie's counterclaim or any answer by her, pro se, or otherwise.
7. See 5 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 30:50
(2d ed. 1999).
8. Because Deardorff did not challenge the assertion in Alyssa and Matthew's
appellate brief, we accept the fact assertion as true. See Tex. R. App. P. 38.1(f); Ingalls
v. Standard Gypsum, L.L.C., 70 S.W.3d 252, 255 n.2 (Tex.App.--San Antonio 2001, pet.
denied). 
9. Double Ace initiated a request.
10. Alyssa and Matthew did not present any issues challenging these portions of the
trial court's judgment.


ight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.EndnoteTextChar
 {mso-style-name:"Endnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Endnote Text";
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0009-CR%20%20Opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0009-CR%20%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0009-CR%20%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0009-CR%20%20Opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0009-CR%20%20Opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
-->








NO. 07-09-0009-CR

NO. 07-09-0010-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C 

 

 MAY 20, 2010



 

 



 

 

CHRISTOPHER DEMONT SMITH, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 47TH DISTRICT COURT OF POTTER
COUNTY;

 

NOS. 57,392-A & 57,393-A; HONORABLE HAL MINER, JUDGE



 

 



 

Before QUINN,
C.J., and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

            Appellant, Christopher Demont Smith,
was convicted by a jury of one count of indecency with a child[1]
and three counts of aggravated sexual assault of a child[2]
and sentenced to four periods of confinement.[3]  In addition to the periods of incarceration
ordered, each judgment ordered Appellant "to pay
all fines, court costs, and restitution as indicated above."  In each case, the judgment was blank as to
"Court Costs."  By six issues,
Appellant contests: (1) the legal sufficiency of the evidence; (2) the factual
sufficiency of the evidence of indecency with a child; and (3) aggravated
sexual assault; (4) whether the trial court violated Appellant's Sixth
Amendment right to confrontation; and, (5) & (6) the trial court's
assessment of court-appointed attorneys fees. 
We modify the trial court's judgment in Cause No. 57,392-A to clarify
that payment of $5,000 in court-appointed attorney's fees is not a part of the
court costs ordered in this case and affirm the judgment as modified.  The judgment in Cause No. 57,393-A is
affirmed. 

            Issue One -- Legal
Sufficiency of the Evidence

            Appellant was charged with sexually
abusing S.N.B. at a time when she was five years old.  Appellant contends the lack of physical
evidence of sexual abuse during an examination of S.N.B. by Dr. Rebecca Hough,
and the subsequent appearance of physical evidence of sexual abuse at a later
examination, when coupled with his lack of access to the child during that
intervening period, conclusively proves that any sexual abuse to the child was
perpetrated by someone other than him.

            A.        Standard
of Review

            When conducting a legal sufficiency review of the
evidence to support a criminal conviction, we view the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Drichas
v. State, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this is the function
of the trier of fact.  See Dewberry v.
State, 4 S.W.3d 735, 740 (Tex.Crim.App.
1999).  Instead, we determine whether
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
adjudication.  Adelman
v. State, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992).  In so doing, we resolve any inconsistencies
in the evidence in favor of the adjudication. 
Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991).

            B.        Dr.
Hough's Testimony

            Dr. Hough testified she first saw
S.N.B. on October 2, 2007, for the purpose of determining whether S.N.B. had a
urinary tract infection.  Dr. Hough
testified S.N.B.'s physical examination was limited to checking her heart and
lungs.  She did not testify to any
examination of S.N.B.'s genitalia.

            At
a second visit on October 19, 2007, Dr. Hough examined S.N.B. to determine why she
continued to wet her pants.  During this
examination, Dr. Hough examined S.N.B.'s vaginal area.  She found evidence of sexual abuse, i.e.,
bruising, blister-type lesions, and hardened tissue.  Dr. Hough testified the hardened mass of
tissue indicated damage over time or chronic damage.  When Dr. Hough asked S.N.B. whether anyone
touched her inappropriately, S.N.B. named Appellant.  S.N.B. also told Dr. Hough that Appellant
"put where he pees in where she pees," and, "[w]hen she told him
no, he hit her, and he's done this many times."  Dr. Hough was not asked, and did not offer,
any opinion regarding when S.N.B. might have suffered the trauma she described.

            Having
reviewed the entire record, we find no evidence indicating that the trauma
discovered by Dr. Hough during the second examination occurred exclusively between
the time she first examined S.N.B. and the second examination.   Furthermore,
even if Dr. Hough's testimony established that S.N.B. was sexually assaulted
during that period, that fact does not mutually exclude the possibility that
Appellant assaulted her during some other period. The evidence does show that
S.N.B. named Appellant in outcries of sexual abuse made to Dr. Hough, Kim
Hardy--her grandmother, and Becky O'Neal, a Sexual Assault Nurse Examiner, who also
found evidence of sexual abuse when she examined S.N.B.  This evidence is legally sufficient to
support the jury's verdict.  See Castillo v. State, 913 S.W.2d 529,
535 n.3 (Tex.Crim.App. 1995); Rodriguez
v. State, 955 S.W.2d 171, 174 (Tex.App.--Amarillo 1997, no pet.).  See
also Coronado v. State, No. 07-08-0496-CR, 2010 Tex. App. LEXIS 2401, at *9
(Tex.App.--Amarillo March 31, 2010, no pet. h.).  Accordingly, we overrule Appellant's first
issue. 

            




Issues Two and Three -- Factual Insufficiency

            A.        Standard of Review

            When conducting a factual sufficiency
review, we examine all the evidence in a neutral light and determine whether
the trier of fact was rationally justified in finding guilt beyond a reasonable
doubt.  Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007), cert. denied, 552 U.S. 920, 128 S.Ct.
282, 169 L.Ed.2d 206 (2007); Watson v.
State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006).  We give deference to the fact finder's
determination when supported by the record, and cannot reverse a conviction
unless we find some objective basis in the record demonstrating that the great
weight and preponderance of the evidence contradicts the verdict.  Watson,
204 S.W.3d at 417. 
The criminal verdict will be set aside "only if the evidence is so
weak that the verdict is clearly wrong and manifestly unjust, or the contrary
evidence so strong that the standard of proof beyond a reasonable doubt could
not have been met."  Garza v. State, 213
S.W.3d 338, 343 (Tex.Crim.App. 2007). 
In addition, the fact finder is entitled to judge the credibility of the
witnesses and may choose to believe all, or some, or none of the testimony
presented.  Chambers v. State, 805 S.W.2d 459, 461
(Tex.Crim.App. 1991).

Additionally, as directed by the
Texas Court of Criminal Appeals, when conducting a factual sufficiency review,
we must include a discussion of the most important and relevant evidence that
supports the appellant's complaint on appeal. 
Sims v. State, 99 S.W.3d 600, 603
(Tex.Crim.App. 2003).  This does
not, however, mean that we are required to discuss all evidence admitted at trial. 
See id.  See also Roberts
v. State, 221 S.W.3d 659, 665 (Tex.Crim.App.
2007).  In that
respect, Appellant contends the State's evidence of indecency with a child is
factually insufficient because:  (1)
S.N.B.'s testimony at trial was inconsistent; (2) neither Dr. Hough nor the
SANE nurse swabbed S.N.B. for DNA evidence; (3) Hardy's testimony was biased
against Appellant because of his race; and (4) the police did not interview
S.N.B.'s grandparents.  

            B.        Indecency with a Child

            A
person commits the offense of indecency with a child if a person engages in
sexual contact with the child or causes the child to engage in sexual
contact.  Tex. Penal Code Ann. § 21.11(a)(1) (Vernon Supp. 2009). 
The term "sexual contact" means any of the following acts if
committed with the intent to arouse or gratify the sexual desire of any person;
"any touching by a person, including touching through clothing, of the
anus, breast, or any part of the genitals of a child," id. at §
21.11(c)(1), or "any
touching of any part of the body of a child, including touching through
clothing, with the anus, breast, or any part of the genitals of a
person."  Id. at § 21.11(c)(2).

            In
addition to Dr. Hough's testimony described above, Hardy's and S.N.B.'s testimony
corroborated Dr. Hough's account of her outcry. 
S.N.B. also testified Appellant touched her in her "special
place" and "it hurt." 
O'Neal, the nurse who conducted S.N.B.'s SANE examination, testified
S.N.B. told her that Appellant "touch[ed] her pee
pee," "put his mouth on [her] pee pee," and "put a nail in
[her] butt and put a seed in her butt." 
O'Neal testified S.N.B.'s SANE examination showed evidence of sexual
abuse in her vaginal area and her anus showed immediate dilation, indicating
repeated penetration.  Dr. Hough's
examination corroborated the results of O'Neal's examination with regard to
S.N.B.'s vaginal area.  

            Any inconsistency between S.N.B.'s
prior outcries and her testimony at trial went to her credibility.  Based upon the evidence recounted above, the
jury could have reasonably believed that Appellant engaged in sexual contact
with S.N.B. even though some of S.N.B.'s trial testimony was inconsistent with
her earlier out-of-court statements and her in-court testimony.  See,
e.g., In re A.B., 133 S.W.3d 869, 873-74 (Tex.App.--Dallas 2004, no pet.); Washington v. State, 127 S.W.3d 197, 204
(Tex.App.--Houston [1st Dist.] 2003, pet. dism'd).  Moreover, our evaluation of the evidence
"should not substantially intrude upon the jury's role as the sole judge
of the weight and credibility of witness testimony."  Jones
v. State, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 39 L.Ed.2d 54
(1997).  Accordingly, to the extent
Appellant claims the evidence is factually insufficient because S.N.B.'s prior
statements were not credible, we hold that the evidence in support of the
jury's verdict was not so weak as to render the verdict clearly wrong or
manifestly unjust.

            Appellant
does not cite any case law or other authority in support of his contention that
evidence of indecency with a child is factually insufficient in the absence of
the victim being swabbed for DNA.  Thus,
this contention was insufficiently briefed, and therefore, waived.  Tex. R. App. P. 38.1(h).  See Cardenas v. State, 30 S.W.3d 384, 393 (Tex.Crim.App. 2000). 

            Neither
does Appellant cite any case law or other authority in support of his
contention that evidence of indecency with a child is factually insufficient in
the absence of the police interviewing the victim's guardian or
grandparents.  This contention was also
insufficiently briefed, and therefore, waived. 
Tex. R. App. P. 38.1(h).  See Cardenas, 30
S.W.3d at 393. 

            Furthermore,
to the extent that this portion of Appellant's argument is that the evidence is
insufficient because S.N.B.'s grandparents were racially biased, whether a
witness's testimony is racially motivated goes to the credibility of the
witness and the weight to be given to their testimony.  The jury is the "exclusive judge of the
credibility of witnesses," and the reconciliation of conflicts in the
testimony is also within the "exclusive province of the jury.  See Tex. Code Crim. Proc.
Ann. art. 36.13 (Vernon 2007); id. at art. 38.04
(Vernon 1979); Jones, 944 S.W.2d at
647.  By rendering a guilty verdict,
the jury apparently chose to accept the truthfulness of Hardy's testimony that S.N.B.'s
behavior markedly changed after she visited Appellant and his wife, as well her
account of S.N.B.'s outcry to Dr. Hough.  Washington, 127 S.W.3d
at 204.  The jury could have also believed
Hardy's testimony that, even though she "didn't like the idea" of her
daughter being with a black man, she "just accepted it and went about
[her] business."

            Accordingly, we find the State's evidence in support
of the jury's verdict of guilty as to the offense of indecency with a child was
not so weak as to render the verdict clearly wrong or manifestly unjust.  Appellant's second issue is overruled.

            




C.        Aggravated Sexual Assault 

            Appellant contends the State's
evidence of aggravated sexual assault at trial was also factually insufficient
because:  (1) S.N.B.'s testimony was
inconsistent; (2) terms used by S.N.B. in her outcry were unexplained; and (3)
S.N.B.'s outcry to Dr. Hough was made while Hardy was in the room.

            A
person commits the offense of aggravated sexual assault if the person,
intentionally or knowingly, causes the penetration of the anus or sexual organ
of a child, younger than 14 years of age, by any means, or causes the sexual
organ of a child to contact or penetrate the mouth, anus, or sexual organ of
another person, including the actor. 
Tex. Penal Code Ann. § 22.021(a)(1)(B) &
(a)(2)(B) (Vernon Supp. 2009).

            S.N.B.'s
outcry statement to Dr. Hough is described above.  Hardy's and S.N.B.'s testimony corroborated
Dr. Hough's account of S.N.B.'s outcry, O'Neal's testimony supported S.N.B.'s
version of the events, and Dr. Hough's examination corroborated the results of
O'Neal's SANE examination with regard to the existence of trauma to S.N.B.'s
vaginal area.  Any inconsistency between
S.N.B.'s prior outcries and her testimony at trial went to her
credibility.  Based upon the evidence
recounted above, the jury could reasonably have believed that Appellant
committed the offense of aggravated sexual assault.  See, e.g., In re A.B., 133 S.W.3d at 873-74; Washington, 127 S.W.3d at 204.  The fact that S.B.N.'s testimony was
inconsistent does not make it factually insufficient.

            Appellant
next contends the evidence was factually insufficient because there were terms
in S.N.B.'s outcry to O'Neal that were unexplained by S.N.B.  In sexual abuse cases, a child victim may
testify using language appropriate for his/her age to describe the sexual
assault because "one cannot expect the child victims of violent crimes to
testify with the same clarity and ability as is expected of mature and capable
adults;" Villalon v. State, 791
S.W.2d 130, 134 (Tex.Crim.App. 1990) (en
banc), and a child victim's outcry statement alone can be sufficient to
support a conviction for aggravated assault. 
Coronado, 2010 Tex. App. LEXIS
2401 at *9; Kimberlin v. State, 877
S.W.2d 828, 831 (Tex.App.--Fort Worth 1994, pet. ref'd) (citing Rodriguez v. State, 819 S.W.2d 871, 873
(Tex.Crim.App. 1991) (en banc).  Further, putting aside the terms contested by
Appellant, there remains sufficient evidence upon which a jury could reasonably
base its verdict.  

            Finally,
Appellant attempts to make a connection between S.N.B.'s outcry to Dr. Hough, made
while Hardy was in the room, and S.N.B.'s testimony that "Momma Kim
[Hardy] told her what to say" and she "[didn't] know what [Hardy]
told her."  Whether this testimony
affected the verdict was a matter left to the jury's sound discretion.  The fact finder is entitled to make these decisions
and may choose to believe all, some, or none of the testimony presented.  Chambers,
805 S.W.2d at 461. 
By rendering a guilty verdict, the jury apparently chose to accept the
truthfulness of S.N.B.'s testimony.  Washington, 127 S.W.3d
at 204.    

            Accordingly,
we find the State's evidence in support of the jury's verdict of guilty of
aggravated sexual assault of a child was not so weak as to render the verdict
clearly wrong or manifestly unjust. 
Appellant's third issue is overruled.




Issue Four -- Sixth Amendment

            Appellant next contends the trial
court violated his Sixth Amendment right to confront his accuser by permitting
the State's prosecutor to stand between S.N.B. and Appellant during a portion
of her testimony.  During the State's
direct examination of S.N.B., the State's attorney requested permission from
the trial court to stand between S.N.B. and Appellant.  The State's attorney stated that he did
"not want to block [Appellant's] view but [S.N.B.] keeps looking over at
him and I'm concerned now. . . ." 
The trial court granted the State's request over Appellant's Sixth
Amendment objection based on Crawford.[4]

            The
Sixth Amendment provides, in relevant part, that "[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him.  U.S. Const. amend. VI.[5]  The Confrontation Clause reflects a
preference for face-to-face confrontation at trial, but that preference must
occasionally give way to considerations of public policy and the necessities of
the case.  Maryland v. Craig, 497 U.S. 845, 849, 110 S.Ct. 3157, 111 L.Ed.2d
666 (1990); Coronado, 2010 Tex. App.
LEXIS 2401 at *9 (construing the public policy considerations of article
38.071, section 2(b) of the Texas Code of Criminal Procedure, as an appropriate
constitutional accommodation in lieu of face-to-face confrontation).  The United States Supreme Court has stated
that an exception to the right of face-to-face confrontation exists when the
State shows that a special procedure is necessary to protect child witnesses
from the trauma of testifying in court.  See Craig, 497 U.S. at 855.[6]

            Here,
S.N.B. appeared at trial and was subject to cross-examination.  Appellant does not assert that she was hidden
from the jury's view or from his counsel's view at any time while she was
testifying.  Rather, she testified under
oath in view of the jury while Appellant's counsel was given an unfettered
opportunity to cross-examine S.N.B. while Appellant was in her full view.  Accordingly, we cannot say Appellant was
denied his constitutional right to confrontation by the limited accommodation
made during the State's direct examination. 
See Moore v. State, 169 S.W.3d 467, 470 n.8 (Tex.App.--Texarkana 2005,
pet. ref'd) ("[W]hen a witness appears at trial and is subject to
cross-examination, the Confrontation Clause is not violated.").  See also
Palmer v. State, 716 S.W.2d 174, 176-77 (Tex.App.--Houston [14th Dist.]
1986, pet. ref'd), motion for reh'g
denied, 741 S.W.2d 451 (Tex.Crim.App. 1987) (per curiam).  Appellant's
fourth issue is overruled.

            




Issue Five and Six -- Court-Appointed Attorneys Fees

            By issues five and six, Appellant
makes a two prong attack on what he contends is the erroneous assessment of
attorney's fees in this case.  The first
prong of Appellant's attack is that a trial court may not order a criminal
defendant to repay the State for the costs of a court-appointed attorney
without making a determination, based upon competent evidence, that the
defendant has financial resources that enable him to offset in part or in whole
the costs of legal services provided.  In
support of this prong of his attack, Appellant relies heavily upon this Court's
decision in Mayer v. State, 274
S.W.3d 898 (Tex. App.--Amarillo 2008) affd,
No. PD-0069-09, 2010 Tex.Crim.App.
LEXIS 100 (Tex.Crim.App. March 24, 2010). The second prong of Appellant's
attack is that the trial court erred because it did not orally pronounce the
assessment of attorneys fees at sentencing, nor did it declare the precise
amount of attorney's fees in its written judgment.  In support of this prong of his attack,
Appellant relies upon the decision in Burke
v. State, 261 S.W.3d 438, 439 (Tex.App.--Austin 2008, no pet.) (holding that a judgment assessing an undetermined amount of
attorney's fees was error where the trial court did not order the Defendant to
pay a specific amount of attorney's fees either in its oral pronouncement or
its written judgment).    In response,
the State does not address the second prong; but, instead, urges this Court to
reconsider its judgment and opinion in Mayer.[7]

            




A.        Reimbursement of
Attorney's Fees

            Appellant
contends the trial court erred by ordering him to repay the State for the costs
of his court-appointed attorney.  Under
article 26.05 of the Texas Code of Criminal Procedure, a trial court has
authority to order reimbursement of appointed attorneys fees if the court determines, based upon sufficient evidence, that a defendant
has financial resources that enable him to offset, in part or in whole, the
costs of the legal services provided.  See Tex. Code Crim. Proc.
Ann. art. 26.05(g) (Vernon Supp. 2009).  The record before us does not contain a determination
or finding by the trial court that Appellant had any financial resources or was
"able to pay" the appointed attorneys fees.

            The
record reflects that on March 26, 2008, Appellant filed an affidavit, including
relevant financial information, wherein he requested the appointment of counsel
for representation at trial.  On March 27,
2008, the trial court granted his request and appointed counsel.  Again, on December 18, 2008, Appellant filed
a Pauper's Oath on Appeal petitioning
the trial court to appoint appellate counsel on appeal, and again on January 5,
2009, the trial court determined he was entitled to that relief, ordered the
court reporter to prepare a reporter's record, and appointed appellate counsel
to assist Appellant in the presentment of his appeal.  Unless a material change in his financial
resources occurs, once a criminal defendant has been found to be indigent, he
is presumed to remain indigent for the remainder of the proceedings.  Tex. Code Crim. Proc. Ann. art.
26.04(p) (Vernon Supp. 2009).  Therefore, while there is no evidence of
record demonstrating a material change in Appellant's financial resources, there
was ample evidence demonstrating that, before trial and immediately following
rendition of judgment, Appellant was indigent and qualified for court-appointed
counsel.  

            Without
evidence demonstrating Appellant's financial ability to offset the costs of
legal services, any order requiring Appellant to reimburse the State for the
costs of his court-appointed attorney would be error.  See
Mayer v. State, No. PD-0069-09, 2010 Tex.Crim.App. LEXIS 100 (Tex.Crim.App.
March 24, 2010).  Accordingly,
Appellant's fifth issue is sustained.  

            B.        Assessment of Undetermined Amount of
Attorney's Fees

            The second prong of Appellant's
attack is premised on the argument that the trial court did not order Appellant
to pay a specific amount of attorney's fees, either by pronouncement at
sentencing or in the written judgment.  Even
though the State does not address this argument, the validity of Appellant's premise
is incorrect.  The judgment in question
appears to be a form customarily used by the district courts of Potter County,
Texas.  The introductory summary
statements contained on the first page of the judgment state:

________________________________________________________________

Fine:                     Court
Costs:              Restitution:                Restitution Payable to:

N/A                       $                                  $ N/A              __        Victim__ Agency/Agent

 

            Page
two of the judgment contains the statement: "The Court Orders Defendant to pay all fines,
court costs, and restitution as indicated above."  (Emphasis in original).  Even though the judgment in question shows a
blank for court costs, the Bill of Costs contained
in the Clerk's Record indicates that Appellant was required to pay $5,000 for
court-appointed attorney's fees in Cause No. 57,392-A.  The Bill
of Costs in Cause No. 57,393-A does not include an amount for attorney's
fees.  A cost indicated on a certified Bill of Costs prepared by the District
Clerk can be collected from a criminal defendant.  See
generally Tex. Code Crim. Proc. Ann. art. 103.001, et seq. (Vernon 2006). Therefore,
to the extent that the judgment does order Appellant to pay court costs, we
find that it does order him to pay a definite and defined amount of attorney's
fees.  Appellant's sixth issue is
overruled. 

Conclusion

            Having
determined that the trial court erred by requiring Appellant to reimburse the
State for the costs of his court-appointed attorney, we modify the judgment in
Cause No. 57,392-A to clarify that the order to pay court costs does not
include a requirement that he pay the $5,000 in attorney's fees contained in
the Bill of Costs.  As modified, the trial courts judgment
in Cause No. 57,392-A is affirmed.  The
trial courts judgment in Cause No. 57,393-A is affirmed. 

                                                                                                Patrick
A. Pirtle

                                                                                                     
Justice  

 

Do not publish.











[1]See Tex. Penal Code Ann. § 21.11(a)(1) Vernon Supp. 2009). 





[2]See Tex. Penal Code Ann. § 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2009).

 





[3]Appellant was originally charged with
two counts of indecency with a child in Cause No. 57,392-A, and three counts of
aggravated sexual assault of a child in Cause No. 57,393-A.  In Cause No.
57,392-A, the jury found Appellant guilty of count 1 and sentenced him to five
years confinement.  The trial court
issued an instructed verdict of not guilty as to count two.  In Cause No. 57,393-A, the jury found
Appellant guilty of all three counts of aggravated sexual assault and sentenced
him to sentences of thirty-five years, thirty-five years, and fifteen years
respectively.  The trial court ordered
that the five year sentence be served concurrent to any other period of confinement,
and that the remaining sentences be served consecutively.      





[4]In
Crawford v. Washington, 541 U.S. 36,
124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held
that in-court testimony or its functional equivalent (i.e., "material such as affidavits, custodial examinations, prior
testimony that the defendant was unable to cross-examine, or similar pre-trial
statements that declarants would reasonably expect to be used
prosecutorially") may not be used as evidence against an accused unless
the accused has an opportunity to confront and cross-examine the maker of the
statement.  Id. at 51.  





[5]This
right to confrontation was made applicable to the states by the Due Process
Clause of the Fourteenth Amendment.  Pointer v. Texas, 380 U.S.
400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).





[6]The
determination of whether alternative forms of testimony are necessary should be
made on a case-by-case basis.  See Craig, 497 U.S. at 855.  Contrary to Appellant's contention, Texas
Code of Criminal Procedure article 38.071 is inapplicable here because the
article "applies only to a hearing or proceeding in which the court
determines that a child . . . would be unavailable to testify in the presence
of the defendant. . . ."  Tex. Code Crim. Proc. Ann. art. 38.071 § 1
(Vernon Supp. 2009).  Here, S.N.B.
did testify in Appellant's presence.





[7]At
the time the State filed its brief it did not have the benefit of the Court of
Criminal Appealss decision in Mayer v.
State, No. PD-0069-09, 2010 Tex.Crim.App. LEXIS 100 (Tex.Crim.App. March 24, 2010).