**In the Matter of A.B., a Minor Child.**

No. 05–02–01748–CV.

Court of Appeals of Texas, Dallas.

May 7, 2004.

Ronald W. Danforth, McKinney, for appellant.

John Roach, Sr., Criminal District Attorney, Katharine K. Decker, McKinney, for State.

Before Justices BRIDGES, FRANCIS and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

·A.B. was adjudicated a delinquent child after the trial court found he had sexually

assaulted his younger sister, A.R.B. The trial court ordered two years probation with up to twelve months confinement in the Collin County Juvenile Detention Center. In five issues, A.B. complains of legal and factual insufficiency of the evidence, the erroneous admission of hearsay by way of a videotape, the trial court's inappropriate comment on the weight of the evidence, and ineffective assistance of counsel. We affirm the judgment of the trial court.

## LEGAL SUFFICIENCY OF THE EVIDENCE

■ In his first issue, A.B. argues the evidence is legally insufficient to support his adjudication because there is no proof A.B. *caused* the penetration or the contact by his sexual organ. He contends that the evidence at trial indicates at most that A.B. may have permitted his sister to perform oral sex on him. A person commits Aggravated Sexual Assault if the person causes the penetration of the mouth of a child by the sexual organ of the actor or causes the mouth of a child to contact the sexual organ of another person, including the actor, and the victim is younger than 14 years of age.[1] TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2002). In juvenile cases, we apply the standards used in criminal cases to determine the legal sufficiency of the evidence. *In re L.M.*, 993 S.W.2d 276, 284 (Tex.App.-Austin 1999, pet. denied). The relevant question is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State*, 905 S.W.2d 570, 574 (Tex.Crim.App.1995). When conducting a legal sufficiency review of the evidence, we consider both admissible and inadmissible evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

### Evidence

■ Kim Everett, a teacher with the Primrose School in McKinney, testified that A.R.B.'s friend came to her and told her that A.R.B. had told her a secret and what that secret was. Everett passed along this information to the director of the school, who in turn called Susan Dial, the area operations director for Primrose Schools. Dial called A.R.B. into her office and asked her about her conversation with her friend. Dial testified that A.R.B. seemed very nervous, and that when the questioning began, she started crying, hid her face in her hands, and got red blotches on her face and neck. A.R.B. eventually told Dial that she had kissed her brother and he kissed her on the cheeks and on the lips. She said that she loved her brother and he loved her. She also admitted that she kissed him on his private parts and he

---

1. A.B. assumes that the aggravating factor in this case is threat of bodily injury. The aggravating factor, however, is the victim's age. At the time A.B. committed the offenses, his sister was six years old. A.B. also argues that aggravated sexual assault cannot be committed by a child against another child. The aggravated sexual assault statute states that "[a] *person* commits an offense...." (emphasis added) TEX. PEN.CODE ANN. § 22.021(a) (Vernon Supp.2002). At the time of the offense, "person" was defined as an individual, corporation, or association. TEX. PEN.CODE ANN. § 1.07(38) (Vernon 1994). "Individual" was defined as "a human being who has been born and is alive." TEX. PEN.CODE ANN. § 1.07(26) (Vernon 1994). He cites no authority for his position that the term "person" does not include minors, and we have found none.

kissed her on her private parts. Dial testified that A.R.B. seemed relieved after she had told her "secret." Dial called Child Protective Services and Wayne Barclay came to the school.

Barclay did not testify at trial, but he was depicted in a videotape recorded at the C.P.S. offices the day after A.R.B. told her friend and Dial about her activities with A.B. On the tape, Barclay and A.R.B.'s mother asked A.R.B. to tell them the secret. She began to whimper and went to her mother, who held her, caressed her, and told her that nothing was going to happen to her. A.R.B. first whispered to her mother that she and A.B. had put their tongues together. When pressed again to tell the whole secret, A.R.B. resisted, saying that "I can't. Tony won't let me. Tony said don't tell the secret." She also said that it was gross, that her mother would not like her if she knew, that her mother would get sick if she told her, and that she would get mad. A.R.B. finally agreed to tell her mother the secret if Barclay would leave. After Barclay left the room, A.R.B. said that A.B. had made her kiss his "wiener," and that he also made her suck it. When asked why, A.R.B. explained that A.B. wanted her to kiss and suck his penis because it was "hurting so bad." She said that this was the only time this had happened, but that she and A.B. had been kissing with their tongues since she was five.

Claudia King, a supervisor with C.P.S. testified that before the video interview, she got a promise from A.R.B. that she would tell the truth. A.R.B. told her there was a secret between herself and her brother. A.B. told her he would kill her if she told. A.R.B. did not believe A.B. would kill her, but thought he would not protect her from ghosts anymore if she told.

After viewing the evidence in the light most favorable to the judgment, we hold that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Specifically, we hold that because A.R.B. told her mother A.B. *"made* [her] kiss his wiener," and that he *"made* [her] suck it, too," a rational trier of fact could have found that A.B. caused the contact and penetration. We overrule A.B.'s first issue.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

In his second issue, A.B. argues that the evidence is factually insufficient to sustain his adjudication. In reviewing the factual sufficiency of the evidence, we are to view all of the evidence in a neutral light, favoring neither party. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim. App.1996). We must determine whether a neutral review of all the evidence, both supporting and against the finding, demonstrates that the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State,* No. 539–02, 2004 WL 840786, at *7, —— S.W.3d ——, —— (Tex.Crim.App. April 21, 2004). Evidence is factually insufficient when evidence supporting the verdict, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Evidence is also insufficient when contrary evidence is so strong that the beyond-a-reasonable doubt standard could not have been met. *Id.* The fact finder is entitled to judge the credibility of the witnesses and may choose to believe all, some or none of the testimony presented. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991).

### Evidence

■ In addition to the evidence recounted pursuant to our legal sufficiency review,

there is also evidence in contravention of a finding that A.B. committed aggravated sexual assault, as follows. The state called A.B.'s sister to the stand. She was eight years old at the time. Upon direct and cross-examination, she denied that the sexual assault had ever happened. She admitted telling her mother that she kissed her brother's "wiener" and that she also sucked it, but she said that she was lying. Specifically, A.R.B. testified that she made up the story about her brother making her kiss and suck his penis because she was mad at him and wanted him to get into trouble. A.R.B. stated that on the night of the alleged offenses, there was a thunderstorm. She became frightened, went to A.B.'s room, and asked if she could sleep on the floor beside his bed. A.B. said that she could not sleep in his room, so she slept on the couch in another room instead. A.R.B. came up with the idea of how to get her brother in trouble when she heard some boys yelling at a hockey game. They were yelling "suck my wiener" to boys on the other team and some mothers told the boys to stop or they would get in trouble. A couple of weeks later, A.R.B. was feeling "guilty and bad" about what she did to A.B., so she told her parents that she had lied. She did not realize that A.B. would get in such "big trouble" because of her story. She missed A.B. and wanted him to come home, but she was not changing her story for that reason. A.R.B. denied that anyone told her what to say, and that she knew the difference between the truth and a lie. A.R.B. accused Dial of lying when she testified.

A.B.'s mother testified that A.R.B. had been seeing a psychologist once or twice a month for almost a year. She stated that the doctor saw no signs of trauma or sexual abuse. She told the court that A.B. had always denied the allegations that he had sexually assaulted his sister, and that A.R.B. had told her that she lied about A.B. because he would not let her sleep with him during a thunderstorm. A.B.'s mother also said that A.R.B. tells lie after lie and that her lies get her in trouble.

Dr. Alan Ingram testified that he was a clinical psychologist who conducted three hours of interviews and two hours of testing in order to evaluate A.B. The doctor stated that A.B. had been diagnosed with ADD Hyperactivity and oppositional defiance disorder. A.B. would periodically erupt in anger, become somewhat destructive and could be assaultive. He had been in special education programs because of these problems. A.B. had been put on medication, was mainstreamed in the classroom and was making progress. In the last ten years, A.B. had seen numerous doctors, psychiatrists and psychologists and there had never been a report which suggested any kind of deviant behavior in the area of sexual activities. A.B. had the sexual development of a normal adolescent. The doctor went on to state that A.B. did not have a callousness of consciousness that would make it easier for him to justify aberrant behaviors.

**Analysis**

This court must defer to the judge's findings and may not substantially intrude upon the factfinder's role as the sole judge of the weight and credibility of the witnesses. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997). The trial judge had the opportunity to hear A.R.B. tell two strikingly different stories. With the aid of the videotape, he was also able to observe the demeanor of the little girl when she related the two versions. There is ample evidence A.B. sexually assaulted A.R.B. A.B.'s contrary evidence merely created a fact issue. The trial judge be-

lieved A.R.B.'s description of the events when she was videotaped rather than her testimony at trial, which he was entitled to do. Based on our neutral review of all the evidence, both supporting and against the finding, the court was rationally justified in finding guilt beyond a reasonable doubt. We overrule A.B.'s second issue.

## ADMISSION OF VIDEOTAPE

██ In his third issue, A.B. asserts that the trial court erred when it admitted a videotape recorded at the C.P.S. offices of A.R.B. telling her mother about the offenses in question. He argues that the state failed to make a proper showing under article 38.071, section 5 of the Code of Criminal Procedure, that the videotape contained inadmissible hearsay, and that the state was attempting to impeach its own witness. The admission or exclusion of evidence is a matter within the trial court's discretion. *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim.App.2001). As long as the trial court's ruling is within "the zone of reasonable disagreement," there is no abuse of discretion. *Rachal v. State*, 917 S.W.2d 799, 807 (Tex.Crim. App.), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996). Moreover, if the trial court's decision is correct on any theory of law applicable to the case, it will be upheld. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000).

The record reflects that A.B. objected to the admission of the tape-recorded statements because the state failed to lay the predicate pursuant to article 38.071, section 5 of the Code of Criminal Procedure.

On appeal, A.B. now asserts that A.R.B. was not placed under oath or otherwise admonished in a manner appropriate to the child's age and maturity to testify truthfully before C.P.S. recorded her statement. *See* Tex.Code Crim. Proc. Ann. art. 38.071 § 5(10) (Vernon Supp.2002). Article 38.071 does not apply to the admission of A.R.B.'s tape-recorded statement, however, because those requirements are only applicable when the court determines that a child younger than 13 years of age is unavailable to testify in the presence of the defendant. *See* Tex.Code Crim. Proc. Ann. art. 38.071 § 1 (Vernon Supp.2002). That is not the situation in this case because A.R.B. was available to testify in open court and, in fact, did testify and was questioned by both the state and the defense.

██ A.B. also objected at trial that the videotape contained inadmissible hearsay. The state countered that the tape was admissible to impeach A.R.B.'s trial testimony that she had lied to her mother and everyone else about what her brother had done to her. A prior inconsistent statement may be admitted under rule 613 of the Rules of Evidence. But before extrinsic evidence of the statement is allowed, the witness must be told the contents of the statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. Tex.R. Evid. 613(a). If the witness unequivocally admits having made the statement, extrinsic evidence of it shall not be admitted. *Id.*[2] In regards to A.B.'s hearsay objection, the admissibili-

2. We acknowledge that if a failure to lay the proper predicate objection had been made at trial, the videotape would not have been allowed because A.R.B. admitted making the inconsistent statements. However, in per- forming a legal sufficiency analysis, as we did in A.B.'s first issue, we consider all evidence, whether admissible or not. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999), *cert.*

ty or non-admissibility of hearsay is controlled by Texas Rules of Evidence 801 through 806. An entirely separate section of the rules, Texas Rules of Evidence 601 through 615, deals with "Witnesses." Specifically, rule 613 is entitled, "Prior Statements of Witnesses; Impeachment and Support." While A.B.'s objection to the tape-recorded statements on the grounds of hearsay was sufficient at the point it was made, once the state countered the hearsay objection by offering the statements for impeachment purposes only, this offer had the effect of putting the burden back on A.B. to make a specific objection to such impeachment testimony. If introduced for impeachment purposes only, the tape-recorded statements do not constitute hearsay because they are not offered to prove the truth of the matter asserted. TEX.R. EVID. 801(d). A.B. did not object at trial that the proper predicate had not been laid to impeach A.R.B. with a prior inconsistent statement and the issue is not preserved for appeal. *See* TEX.R.APP. P. 33.1(a)(1); *Saldano v. State,* 70 S.W.3d 873, 889 (Tex.Crim.App.2002).

A.B. also objected at trial that the tape was inadmissible because the state was attempting to impeach its own witness. However, rule 607 of the Rules of Evidence states that "the credibility of a witness may be attacked by any party, including the party calling the witness." TEX.R. EVID. 607. We overrule issue three.

## COMMENT ON THE WEIGHT OF THE EVIDENCE

In his fourth issue appellant complains that the following discourse between trial judge and prosecutor shows that the court was not fair and impartial:

[COURT]: Well, let me say this. Our two hours are up. We've got a witness who, frankly, I don't believe today, but I don't believe that there's any way that you're going to get a reasonable doubt—beyond a reasonable doubt. In view of her testimony. I mean, I—this is a terrible position to put her in. Not—not that you put her in that position, but perhaps the parents, perhaps others. I don't know. But—I mean, I don't know how we can—we can prove that—I say prove. We can offer evidence. Frankly, I believe that she is not—that she's not telling the truth today, but I don't think that's enough to—I don't believe that's enough to convict him beyond a reasonable doubt just because it looks like she's not telling the truth today. What do you think?

[PROSECUTOR]: Well, I wasn't really prepared to start making my final argument at this point.

[COURT]: I understand. I mean, if we're drilling a dry hole here, I don't see any sense in prolonging it. I don't—as I say, we've used the two hours that we allotted. This is an important case. It's not—doesn't mean that we—I probably need to interview the children from the other case that I—that they have now come in at supposedly three o'clock. I'm just curious as to how you're going to get from here to conviction when you've got the eye witness saying she lied. And even if I believe she's not telling the truth today, I don't know how that's enough to convict him, find him guilty beyond a reasonable doubt. I say convict him, but—but if you've got some closing argument that will ease my mind about that, why I'll—

[PROSECUTOR]: Well, Judge, as I stated in my opening statement, I do

*denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

have videotapes of the two interviews of the Children's Advocacy Center which I think would be more than adequate to show that [A.R.B.] has lied about a lot of things today. . . . I do have Claudia King on standby because, frankly, I wasn't sure what in the world [A.R.B.] was going to say when I called her to the stand.

Appellant contends that the court erred when it either deliberately or inadvertently assisted the state by advising the prosecutor that the evidence was insufficient to meet the state's burden of proof.

 We agree that a trial judge is not permitted to comment on the weight of the evidence or convey his opinion of the case at any stage of the trial. TEX.CODE CRIM. PROC. ANN. art. 38.05 (Vernon Supp. 2002). However, appellant did not object to the trial judge's statements. It is well settled that almost every right, constitutional or statutory, may be waived by the failure to object. *Saldano,* 70 S.W.3d at 886–89; *Smith v. State,* 721 S.W.2d 844, 855 (Tex.Crim.App.1986); *In re E.M.R.,* 55 S.W.3d 712, 716 (Tex.App.-Corpus Christi 2001, no pet.). The right not to have the trial judge comment on the weight of the evidence or convey his opinion of the case is a right which may be waived. *Moore v. State,* 907 S.W.2d 918, 923 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd) (a defendant's right to prohibit the judge from commenting on the weight of the evidence or conveying his opinion of the case is not fundamental error). We hold that appellant's failure to object at trial has waived his complaint on appeal. We overrule issue four.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### Standard of Review

To show that he received ineffective assistance of counsel, the appellant must prove that counsel's representation so undermined the "proper functioning of the adversarial process that the trial cannot be relied on having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, appellant must prove that counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. However, counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). Appellant has the burden to overcome this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994). An appellate court may not reverse a conviction on ineffective assistance of counsel grounds when counsel's actions or omissions may have been based on tactical decisions, but the record contains no specific explanation for counsel's decisions. *See Bone v. State,* 77 S.W.3d 828, 833–37 (Tex.Crim.App.2002).

Second, *Strickland* requires appellant to show that counsel's performance prejudiced his defense at trial. *Id.* at 692, 104 S.Ct. 2052. "It is not enough for the Appellant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052. He must show that there is a reasonable probability that the result of the proceeding would have been different but for the errors made by counsel. *Id.* at 694, 104 S.Ct. 2052.

### Arguments and Analysis

 Appellant complains that trial counsel was deficient in that he failed to object after the trial court commented on

the weight of the evidence, and in that he failed to request a mistrial. Appellant argues that "there is no trial strategy for permitting the trial court to inform a prosecutor of the weaknesses in the State's case thereby giving the State an opportunity to potentially rectify those weaknesses in the case." However, the record has not been developed to show why trial counsel did not object or request a mistrial. Without a specific explanation for counsel's decisions, appellant cannot overcome the presumption that the challenged action was sound strategy. We overrule issue five.

Finding no error, we affirm the judgment of the trial court.