COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| XIN LIU BAILEY, | | No. 08-08-00023-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 3 |
| | § | |
| THE STATE OF TEXAS, | | of Collin County, Texas |
| | § | |
| Appellee. | | (TC # 003-83846-07) |
| | § | |

## O P I N I O N

Xin Liu Bailey was charged with prostitution.  A jury found her guilty, and the trial court sentenced her to thirty days in jail, probated for one year, plus a fine of $500.  Appellant brings two issues for review.  Finding no error, we affirm.

### FACTUAL BACKGROUND

On May 10, 2007, Plano Detective Curtis Coburn, a twelve-year veteran of the special operations section of the Intelligence Unit, carried out an undercover operation regarding possible prostitution at ABC Health.  When Coburn arrived at ABC Health, he was admitted by an Asian female who led him down a hallway and into a room.  Appellant, a licensed massage therapist, entered the room a few seconds later wearing a red-and-white, spaghetti-strap, above-the-knee dress and bare legs.  Appellant told Coburn, "[T]hen you know the price."  Coburn told Appellant he wanted an hour-long session.  Appellant took $60 from him and, as she left the room, she told him to "get comfortable."  Coburn removed all his clothing and lay face down on the massage table.  When Appellant re-entered the room, she asked if he wanted a "hard massage" or a "soft massage."  Coburn responded that he wanted a soft massage.

Coburn testified that Appellant poured oil on his back and started to massage his back and shoulders. Appellant positioned her body at the head of the table, and as she massaged his back and shoulders, she pressed her crotch into his head. She moved her hips as she bent over, thrusting her groin area into his head. She did this five or six times. Next, Appellant moved to the side of the table and began massaging Coburn's legs. She then massaged his buttocks and the inside of his thighs. She moved her hands between his legs and brushed his scrotum with her fingertips and the back of her hands. She used what he called "light touching" like a "tickle," grazing his scrotum several times and moving her hand in and out between his thighs. Coburn told her it "was making [him] horny." Appellant responded by leaning down and whispering in his ear, "I can make you feel very good." She then kissed him on his cheek.

Coburn asked Appellant how much it would cost to "take care of" him. Appellant answered "a million dollars." Coburn asked if $200 would do, and Appellant said yes. Coburn asked if she wanted the money right then, and she informed him she did. As Coburn approached his pants to retrieve the money, Appellant came around the table, put her arms around his neck, and kissed him on the lips. Coburn removed $200 from his pants and handed it to her. After he gave it to her, she grabbed his penis with her hand and stroked it up and down. As she did so, he gave the "bust" signal to the entry team. The bust signal was "play with my balls." Appellant began playing with Coburn's scrotum then bent at the waist and started lowering her head toward his penis area as though she were going to perform oral sex. Coburn pushed Appellant back, stepped away, identified himself as a police officer, and told her she was under arrest.

Appellant testified that she did not touch Coburn in any sexual way. She denied pushing her groin into his head while giving him a massage, kissing him on the cheek or touching or stroking his penis. When asked about grazing his scrotum, she said, "I swear to God I never touch[ed] there."

When asked whether she reached between his legs, she said, "No, no . . . I never go into the middle there. I never do that."

Appellant claimed that while she was massaging Coburn, he touched her leg and buttocks under her dress and panties. She was "kind of nervous" because she did not know "what's going on" and she "just [did not] want to make the customer mad" at her. She reacted by moving around the table out of his reach. Appellant explained that she laughed nervously when Coburn said he was horny. When he asked her "how much", she started laughing again, and said "okay, a million dollar[s]" because she "just wanted to keep [him] away." Coburn then offered her $200. Appellant testified: "I say, okay, I'm going to wash my hands. I come back. I saw the table. I have $200; it's put on the table there." Coburn then arrested her.

When asked whether she agreed to Coburn's offer, she answered: "Kind of; you know. That's why I say I'm going to wash my hands. I come back, he put $200 bill there." She agreed to the offer because "he push, push, push, right, like that." When asked by defense counsel if she finally gave into Coburn's offer, she replied, "Kind of. I can't be liar, so I just talking the situation over there."

During voir dire, the trial court informed the venire panel of the defense of entrapment, as did the State and defense. At the conclusion of the evidence, however, Appellant requested a jury instruction on entrapment which was denied by the court.

## JURY INSTRUCTION

Appellant argues the trial court committed reversible error in refusing her timely request for an instruction on the law of entrapment.

### Standard of Review

When reviewing charge error, we employ a two-step analysis. *Washington v. State,* 930

S.W.2d 695, 698 (Tex.App.--El Paso 1996, no pet.). We must first determine whether error actually exists in the charge. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); *Washington,* 930 S.W.2d at 698. In making this determination, we view the charge as a whole and our review should not be limited to a series of isolated statements or parts of the charge standing alone. *Washington,* 930 S.W.2d at 698; *see Holley v. State,* 766 S.W.2d 254, 256 (Tex.Crim.App. 1989). Second, we must determine whether sufficient harm resulted from the error to require reversal. *Almanza,* 686 S.W.2d at 171; *Washington,* 930 S.W.2d at 698. Which harmless error standard applies depends upon whether the defendant objected. *Abdnor v. State,* 871 S.W.2d 726, 731-32 (Tex.Crim.App. 1994); *Washington,* 930 S.W.2d at 698. Where the defendant failed to object, she must show that she suffered actual egregious harm. *Almanza,* 686 S.W.2d at 171; *Washington,* 930 S.W.2d at 698.

A charge on a defensive issue is required if the accused presents affirmative evidence that would constitute a defense to the crime charged and a jury charge is properly requested. *Miller v. State,* 815 S.W.2d 582, 585 (Tex.Crim.App. 1991); *Barnes v. State,* 70 S.W.3d 294, 304 (Tex.App.-- Fort Worth 2002, pet. ref'd). In determining whether evidence raises a defense, the credibility of the evidence is not at issue. *Muniz v. State,* 851 S.W.2d 238, 254 (Tex.Crim.App.), *cert. denied,* 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Barnes,* 70 S.W.3d at 304. In other words, if a defendant produces evidence raising each element of a requested defensive instruction, that defendant is entitled to the instruction regardless of the source and strength of the evidence. *Hamel v. State,* 916 S.W.2d 491, 493 (Tex.Crim.App. 1996); *Barnes,* 70 S.W.3d at 304.

*Entrapment*

Texas Penal Code section 8.06(a) provides:

It is a defense to prosecution that the actor engaged in the conduct charged because

he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

TEX.PENAL CODE ANN. § 8.06(a)(Vernon 2003). Thus, entrapment is a defensive theory. *See* TEX. PENAL CODE ANN. § 2.03(c),(d). If evidence supporting the defense of entrapment is admitted, the issue must be submitted to the jury with the instruction that reasonable doubt on the issue requires acquittal. *Id.* § 2.03(d).

Entrapment exists if the criminal intent originates in the mind of the police agent and the agent then induces the accused to commit the offense. *Barnes,* 70 S.W.3d at 304; *Torres v. State,* 980 S.W.2d 873, 875 (Tex.App.--San Antonio 1998, no pet.). Conversely, entrapment does not exist where the police agent merely furnishes the opportunity for the commission of the offense. TEX. PENAL CODE ANN. § 8.06(a). The test for entrapment under Section 8.06 is composed of both subjective and objective elements. *England v. State,* 887 S.W.2d 902, 913 (Tex.Crim.App. 1994); *McGann v. State,* 30 S.W.3d 540, 545 (Tex.App.--Fort Worth 2000, pet. ref'd). For the subjective element, the accused must show that she was induced by law enforcement to engage in the illegal conduct. *England,* 887 S.W.2d at 913. The accused who claims entrapment must therefore produce evidence that the police actually and in fact induced her into committing the charged offense. *Id*.

Once the subjective element of inducement is shown, the accused must additionally demonstrate how she meets the objective element of Section 8.06. *Id.* at 914. For this second element, the accused must show that the persuasion used by the police was such as to cause an ordinarily law abiding person of average resistance to nevertheless commit the offense. *Id.* The amount of persuasion that it takes to meet this test will vary from case to case, but examples include pleas based on extreme need, sympathy, or close personal friendship; offers of inordinate sums of money; and extreme pleas of need due to desperate illness. *Guia v. State,* 220 S.W.3d 197, 204

(Tex.App.--Dallas 2007, pet. ref'd); *Campbell v. State,* 832 S.W.2d 128, 130 (Tex.App.--Corpus Christi 1992, pet. ref'd); *Becerra v. State,* No. 05-99-00412-CR, 2000 WL 124683, at *2 (Tex.App.--Dallas, Feb. 3, 2000, pet. ref'd)(not designated for publication).

However, if the defendant denies that she committed the offense, she will not be entitled to an entrapment instruction. *Norman v. State,* 588 S.W.2d 340, 345 (Tex.Crim.App. 1979). This rule was developed because entrapment assumes the offense was committed, and denial of the offense is thus inconsistent. *Id.* The defendant is not required to plead guilty, but she cannot introduce positive evidence that she did not commit the act. *Becker v. State,* 840 S.W.2d 743, 746 (Tex.App.--Houston [1st Dist.] 1992, no pet.).

*Analysis*

Appellant was charged with committing prostitution by three manner or means. The charge of the court stated in relevant part:

> A person commits an offense if he intentionally offers to engage, agrees to engage, or engages in sexual conduct or contact with another for a fee.

> 'Sexual contact' means any touching of the anus, breast, or any part of the of another person with intent to arouse or gratify the sexual desire of any person. 'Sexual conduct' includes sexual contact and sexual intercourse. 'Sexual intercourse' means any penetration of the female sex organ by the male sex organ.

The State argues that Appellant was not entitled to the entrapment instruction because she did not admit that she committed the conduct charged. In her testimony, Appellant denied engaging in any sexual contact or offering to engage in sexual contact with Coburn. As to the third means, agreeing to engage in sexual contact, her testimony was unclear. When Coburn made her the $200 offer, she said, "[O]kay, I'm going to wash my hands," then left the room and was arrested immediately upon her return. When asked her about her response to Coburn's offer, she did not characterize her response as an outright agreement. Instead, she twice answered that she "kind of" agreed. This is

not an admission that she agreed to engage in sexual contact.

But even if we were to find that Appellant's testimony amounted to an admission of the offense, she was not entitled to the instruction because she did not meet the objective element of the defense. Appellant herself testified that she left the private room, purportedly to wash her hands. She then willingly returned. The objective element required Appellant to demonstrate that because of Coburn's actions, an ordinary law abiding person of average resistance would have returned to the room to commit the offense. We are hard pressed to conclude that a reasonable woman who professed to have been sexually and inappropriately fondled by a first-time client would return to a private room in which a naked and aroused man awaited her. During oral argument, counsel suggested that Appellant may have feared Coburn would pursue her if she attempted to escape. He also opined that perhaps the restroom to which she retreated had only one entry from the private room. That may well be true, but the defense was hers to prove. We will not speculate as to available avenues of escape or retreat. Because we conclude that Coburn merely furnished the opportunity for the commission of the offense, we overrule Point of Error One.

## JUDICIAL MISCONDUCT AND
## DUE PROCESS VIOLATIONS

In Point of Error Two, Appellant argues the trial court committed judicial misconduct calculated to prejudice the right of the defense to a fair trial before an impartial jury. She claims the court misled defense counsel and the venire by implying there would be an instruction on entrapment in the final charge when it had no intention of giving such an instruction based on the facts it was aware were expected to be presented.

*Standard of Review*

To preserve a complaint for appellate review, the party must state the grounds for the desired

ruling from the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds [are] apparent from the context . . . ." TEX.R.APP.P. 33.1(a)(1)(A); *Reyna v. State,* 168 S.W.3d 173, 177 (Tex.Crim.App. 2005). This is to give the trial court an opportunity to rule on the defendant's appellate rationale. *Reyna,* 168 S.W.3d at 178. It is also to give the trial court the opportunity to correct the error or remove the basis for the objection. *Reyna*, 168 S.W.3d at 179. Almost all error, even constitutional error, is waived if the appellant fails to object. *See* TEX.R.APP.P. 33.1(a); *Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex. 1993); *Aldrich v. State,* 104 S.W.3d 890, 894-95 (Tex.Crim.App. 2003).

A defendant may waive her due process complaint, her complaint about the lack of an impartial jury, and her complaint under Article 38.05 of the Code of Criminal Procedure. *See e.g.*, *Goodrum v. State*, No. 01-01-00950-CR, 2003 WL 1995634, at *11 (Tex.App.-- Houston [1st Dist.] May 1, 2003, pet. ref'd)(not designated for publication)(judicial misconduct); *Thomas v. State*, No. 12-07-00048-CR, 2007 WL 4216459, at *2 (Tex.App.--Tyler Nov. 30, 2007, no pet.)(not designated for publication)(judicial vindictiveness); *Rosborough v. State*, No. 06-06-00237-CR, 2007 WL 2033762, at *1 (Tex.App.--Texarkana July 17, 2007, no pet.)(not designated for publication)(judicial vindictiveness); *Hull v. State*, 67 S.W.3d 215, 217 (Tex.Crim.App. 2002)(due process); *Alexander v. State*, 137 S.W.3d 127, 130-31 (Tex.App.--Houston [1st Dist.] 2004, pet. ref'd)(federal and state due process rights); *Cole v. State*, 931 S.W.2d 578, 580 (Tex.App.--Dallas 1995, pet. ref'd)(due process); *Badall v. State*, 216 S.W.3d 865, 867 Tex.App.--Beaumont 2007, pet. ref'd)(right to an impartial jury); *Lister v. State*, No. 08-05-00028-CR, 2006 WL 736496, at *1 (Tex.App.--El Paso Mar. 23, 2006, no pet.)(not designated for publication)(Article 38.05); *Resendez v. State*, 160 S.W.3d 181, 190 (Tex.App.--Corpus Christi 2005, no pet.)(Article 38.05); *In re A.B.*, 133 S.W.3d 869, 876 (Tex.App.--Dallas 2004, no pet.)(Article 38.05).

*Analysis*

Appellant did not raise any of the issues she raises on appeal at trial.  She did not object when the trial court denied her request for an entrapment instruction.  She did file a motion for new trial, but she characterized the court's actions only as "material errors."  She did not raise the myriad of issues she now raises on appeal such as  judicial misconduct or constitutional errors.  She has thus failed to preserve her complaint under Rule 33.1 of the Texas Rules of Appellate Procedure.  We overrule Point of Error Two.  Having overruled both issues for review, we affirm the judgment of the trial court.

September 30, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)