

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00364-CR
### No. 10-09-00365-CR

**GRETCHON WINDELL POWELL,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court Nos. 33731CR and 33732CR

## MEMORANDUM  OPINION

A jury found Gretchon Windell Powell guilty of aggravated assault of a public servant and burglary of a building with intent to commit theft and assessed his punishment, enhanced by prior felony convictions, at seventy years' and ten years' imprisonment respectively.  In two issues, Powell contends that the evidence is legally and factually insufficient to support his convictions.[1]  We will affirm.

---

[1] Powell, who is represented by counsel, filed a *pro se* reply brief.  A criminal appellant has no right to hybrid representation.  *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001).  Generally,

The court of criminal appeals recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). Accordingly, we will apply the same standard of review to each of Powell's sufficiency complaints.

When reviewing a challenge to the sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

---

when an appellant has counsel and counsel has filed a brief, the appellant has no right to file a *pro se* brief. This prohibition on hybrid representation is not absolute. *See, e. g., Warren v. State*, 98 S.W.3d 739, 741 (Tex. App.—Waco 2003, pet. ref'd). We may consider a *pro se* brief if the interests of justice require us to do so. Powell's *pro se* brief replies to the State's brief and discusses the sufficiency complaints. We will thus consider it in deciding this appeal.

The following evidence was presented at trial: Lester Taylor testified that he is the Chief of Police in Maypearl, a town of about 1,000 people, and the police department is very small. On Monday, September 15, 2008, Taylor came on duty at about 3:00 a.m., relieving Lauri Boudreau, the officer who had been on duty. Taylor patrolled the city until about 4:30 or 4:45 a.m. and then went to his office in the police department, which is located in city hall. At about 5:30 a.m., he heard someone banging on the front door of the building, which was closed and locked with a dead bolt. He got up and went to the door of his office. Just after Taylor stepped through his office door, he heard "[o]ne hard thud" and "the front door flung open and a black male entered." Taylor drew his service weapon, a nine-millimeter pistol that he carried cocked with the safety on, and pointed it at the man, whom he later identified as Powell. He asked Powell why he had kicked in the door, and he responded, "Where am I?" Taylor told Powell that he was in the police department. Taylor was wearing a shirt that showed his badge along with his name and identification as the Chief of Police. Powell then said that he needed help because he had been in an accident and there might be injuries.

Taylor asked Powell to put his hands on the wall and "looked at him just to see if he had anything on him," but Taylor did not see anything. Taylor then asked Powell for identification. Powell took a wallet out of his pocket, took the driver's license out, put the driver's license on top of the wallet, and handed Taylor both the driver's license and the wallet. Taylor looked at the driver's license and verified that it belonged to Powell.

Once Taylor had identified Powell, he told him they would have to walk down the hall to the back door. They did so and then went out into the bay of the city maintenance barn where Taylor's marked squad car was parked. Taylor told Powell to get into the car, but Powell instead walked to the center part of the bay. Taylor walked to the bay door to raise it with a chain. Taylor had to holster his weapon to raise the door, but he was watching Powell. However, the chain slipped as Taylor was raising the door, and he took his eye off Powell. Taylor was then hit from the rear and pushed into the wall. Powell got Taylor's pistol and told Taylor to pull the door down or he would shoot Taylor. Taylor pulled the door down.

Taylor began pleading with Powell not to shoot him, but Powell pointed the gun at Taylor and pulled the trigger. When the gun did not fire, Taylor ran toward the back of another squad car, hoping that the door might be unlocked and he would be able to get a shotgun out of it. When he got to the rear of the squad car, Powell yelled at him to stop or he would shoot. Taylor hesitated and looked at Powell, who was still pointing the gun at Taylor and pulled the trigger again. Taylor then ran around the squad car, and Powell pulled the trigger once more. The third time, Powell was using both hands to try to fire the gun. Taylor said that he was in fear of imminent bodily injury and that Powell clearly intended to kill him each time he pulled the trigger.

When the gun did not fire on the third try, Powell started fumbling with the gun and the magazine fell out. While Powell was trying to put the magazine back in the gun, Taylor ran to the back door and was able to close and bolt it. He then locked himself in his office with a loaded shotgun and called 9-1-1. Deputies from the Ellis

County Sheriff's Department arrived shortly thereafter, and a SWAT team searched the building, but Powell was not found. Taylor never recovered his pistol, and Officer Boudreau testified that, after that day, she never again saw him with the pistol.

Taylor identified Powell at trial as the person who broke in and tried to shoot him. Taylor stated that the building was not open to the public at 5:30 a.m. and that Powell did not have consent to enter the building that morning. The door that was kicked in had a wooden box attached to it where people would place payments on the weekends when city hall was not open. Taylor said that people often get paid on Fridays and pay their utilities over the weekend.

Robert Allwardt and Mike Aman, investigators with the Ellis County District Attorney's office, testified that they responded to the scene. Allwardt stated that, among other things, he talked to Taylor and took fingerprints from the areas that Powell might have touched at the scene, but none of the fingerprints collected were identified as belonging to Powell. Both Allwardt and Aman also testified that they did not know why the Ellis County Sheriff's Department did not conduct the investigation.

The next day, Allwardt went to Powell's last known address. There, he met the manager of the residence and confirmed that Powell had, in fact, resided there. Allwardt then discovered some papers that were identified to be Powell's next to a computer in the common area. The Maypearl City Hall address was written in the lower right-hand corner of one of the papers. The manager of the residence acknowledged that the paper was at Powell's residence at a computer that he had

access to, but he could not say with certainty that the paper with the address was Powell's because four men had access to the notepad where the address was written.

Texas Ranger Danny Briley testified that after observing the scene, discussing the events with the other investigators, and talking with Taylor, he obtained an arrest warrant for Powell. Powell was arrested, and Briley then interviewed him. Powell gave a written statement in which he admitted kicking in the door, but, contrary to Taylor's testimony, he stated that he ran away when Taylor tried to open the bay door. Powell's written statement does not discuss Taylor's accusation that Powell took Taylor's gun and tried to shoot Taylor. On cross-examination, Briley additionally stated that he remembered another discussion with Powell:

> Gretchon told me that he needed some weed. He needed a hookup, and that he would be paid some money, have X amount of dollars if he would go kick in the door to the Maypearl Police Department, but that once he busted the door down, his part was done.

Powell told Briley there were two accomplices, Little C and Little Cousin.

The defense presented the testimony of two investigators from the Ellis County Sheriff's Office. Jason Westmoreland testified that he was initially assigned to begin an investigation into what happened at the Maypearl Police Department. However, later that day, his lieutenant advised him "per the sheriff" that he was not to conduct any further investigation. He heard from deputies talking at the scene that the sheriff did not want to be involved because he thought there was something strange about the way the situation had "gone down" and he wanted an outside agency to investigate it. On cross-examination, Westmoreland acknowledged that he had not talked to the sheriff

about it and agreed that "a bunch of deputies [were] shooting their mouths off" and there was not any truth to any of it. Phillip Slaughter, the other investigator, testified that he initially responded to the scene at the Maypearl Police Department but was later ordered to leave the scene by the sheriff.

In his first issue, Powell contends that the evidence is insufficient to support his conviction for burglary of a building. A person commits the offense of burglary of a building if, without the effective consent of the owner, the person enters a building not then open to the public, with intent to commit theft. TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003).

Powell first argues that the evidence is insufficient because, although he may have broken down the door to the building and committed criminal mischief, he did not *enter* the building. Instead, Powell claims that Taylor ordered him into the building. However, Taylor testified that "the front door flung open and a black male entered." The jury obviously believed Taylor's testimony over Powell's written statement, and we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793.

Powell next argues that the evidence is insufficient to establish that he intended to commit theft because it is "mere conjecture by the State that Appellant intended to rob the cash from the night deposit box which [w]as mounted on the back of the door." However, in a prosecution for burglary, the specific intent to commit theft may be inferred from the circumstances. *Goodeaux v. State*, 269 S.W.3d 730, 734 (Tex. App.—

Beaumont 2008, no pet.) (citing *Simmons v. State*, 590 S.W.2d 137, 138 (Tex. Crim. App. 1979)). Here, in addition to Taylor's testimony that people often pay their utilities over the weekend, that the offense occurred early Monday morning, and that the lockbox where people would place their payments was on the back of the door that Powell kicked in, Powell admitted in his written statement that, before kicking in the front door, he had looked in the windows on the back side of the building and did not see anyone in the building. Taylor also testified that entry was made without consent at about 5:30 a.m. *See Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982) ("[A]n entry made without consent in the nighttime is presumed to have been made with intent to commit theft."). The jury could have reasonably inferred Powell's intent to commit theft.

Viewing all the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Powell's conviction for burglary of a building with intent to commit theft.[2] We overrule Powell's first issue.

In his second issue, Powell contends that the evidence is insufficient to support his conviction for aggravated assault on a public servant. A person commits the offense of aggravated assault of a public servant if he intentionally or knowingly threatens a person that the actor knows to be a public servant with imminent bodily injury while

---

[2] *Flores v. State*, 902 S.W.2d 618 (Tex. App.—Austin 1995, pet. ref'd), relied on by Powell, is inapplicable here. In *Flores*, the appellant was convicted of burglary of a building under section 30.02(a)(3) of the penal code, and the appellate court held that the evidence was insufficient to prove that he "attempted to commit theft." In this case, however, Powell was convicted of burglary of a building with intent to commit theft under section 30.02(a)(1) of the penal code. Thus, the *Flores* court did not address the issue before us. The *Flores* court even stated: "A much closer question would be presented in the present cause had the prosecution been for burglary with intent to commit theft, section 30.02(a)(1); however appellant was not charged under that part of the statute." *Id.* at 620.

the public servant is lawfully discharging an official duty and uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B) (Vernon Supp. 2010).

Powell argues that the evidence is insufficient because Taylor's version of events is "incredulous" and points instead to the testimony presented by the defense witnesses, which he claims establishes that the sheriff of Ellis County thought that something was not as it seemed. In his *pro se* reply brief, Powell argues that the jury was presented with contradictory and false evidence and that Taylor's version of the events is "unreasonable and irrational." However, by finding Powell guilty, the jury obviously believed Taylor's testimony. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). A jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *see also Sharp*, 707 S.W.2d at 614. We must defer to the jury's determination concerning what weight to give any contradictory testimonial evidence. *See, e.g., In re A.B.*, 133 S.W.3d 869, 873-74 (Tex. App.—Dallas 2004, no pet.); *Scugoza v. State*, 949 S.W.2d 360, 362-63 (Tex. App.—San Antonio 1997, no pet.); *Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd).

Viewing all the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Powell's conviction for aggravated assault of a public servant.  We overrule Powell's second issue.

Having overruled Powell's issues, we affirm the trial court's judgments.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Judge Anderson[3]
     (Chief Justice Gray concurs with a note)*
Affirmed
Opinion delivered and filed June 8, 2011
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the judgment affirming Powell's convictions.  A separate opinion will not issue.  He notes, however, that he finds no reason, much less an "interest of justice" that would require this court to consider the pro se reply brief of Powell when Powell is ably represented by appointed counsel.  He notes that by referencing and considering the pro se brief we encourage the practice of unauthorized hybrid representation.)

---

[3] Ken Anderson, Judge of the 277th District Court of Williamson County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code.  *See* TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005).