IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00364-CR

No. 10-09-00365-CR

 

Gretchon Windell Powell,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 40th District
Court

Ellis County, Texas

Trial Court Nos. 33731CR
and 33732CR

 



MEMORANDUM  Opinion



 








            A jury found Gretchon
Windell Powell guilty of aggravated assault of a public servant and burglary of
a building with intent to commit theft and assessed his punishment, enhanced by
prior felony convictions, at seventy years’ and ten years’ imprisonment
respectively.  In two issues, Powell contends that the evidence is legally and
factually insufficient to support his convictions.[1] 
We will affirm.

The court of criminal appeals recently
held that there is “no meaningful distinction between the Jackson v.
Virginia legal-sufficiency standard and the Clewis
factual-sufficiency standard” and that “the Jackson v. Virginia
legal-sufficiency standard is the only standard that a reviewing court should
apply in determining whether the evidence is sufficient to support each element
of a criminal offense that the State is required to prove beyond a reasonable
doubt.  All other cases to the contrary, including Clewis, are
overruled.”  Brooks v. State, 323 S.W.3d 893, 902, 912 (Tex. Crim. App.
2010).  Accordingly, we will apply the same standard of review to each of Powell’s
sufficiency complaints.

When reviewing a challenge to the
sufficiency of the evidence to establish the elements of a penal offense, we
must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In doing so, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

            The following evidence was
presented at trial:  Lester Taylor testified that he is the Chief of Police in
Maypearl, a town of about 1,000 people, and the police department is very
small.  On Monday, September 15, 2008, Taylor came on duty at about 3:00 a.m.,
relieving Lauri Boudreau, the officer who had been on duty.  Taylor patrolled
the city until about 4:30 or 4:45 a.m. and then went to his office in the
police department, which is located in city hall.  At about 5:30 a.m., he heard
someone banging on the front door of the building, which was closed and locked
with a dead bolt.  He got up and went to the door of his office.  Just after Taylor
stepped through his office door, he heard “[o]ne hard thud” and “the front door
flung open and a black male entered.”  Taylor drew his service weapon, a
nine-millimeter pistol that he carried cocked with the safety on, and pointed
it at the man, whom he later identified as Powell.  He asked Powell why he had
kicked in the door, and he responded, “Where am I?”  Taylor told Powell that he
was in the police department.  Taylor was wearing a shirt that showed his badge
along with his name and identification as the Chief of Police.  Powell then said
that he needed help because he had been in an accident and there might be
injuries.

Taylor asked Powell to put his hands on
the wall and “looked at him just to see if he had anything on him,” but Taylor
did not see anything.  Taylor then asked Powell for identification.  Powell
took a wallet out of his pocket, took the driver’s license out, put the
driver’s license on top of the wallet, and handed Taylor both the driver’s
license and the wallet.  Taylor looked at the driver’s license and verified
that it belonged to Powell.

            Once Taylor had identified Powell,
he told him they would have to walk down the hall to the back door.  They did
so and then went out into the bay of the city maintenance barn where Taylor’s
marked squad car was parked.  Taylor told Powell to get into the car, but Powell
instead walked to the center part of the bay.  Taylor walked to the bay door to
raise it with a chain.  Taylor had to holster his weapon to raise the door, but
he was watching Powell.  However, the chain slipped as Taylor was raising the
door, and he took his eye off Powell.  Taylor was then hit from the rear and
pushed into the wall.  Powell got Taylor’s pistol and told Taylor to pull the
door down or he would shoot Taylor.  Taylor pulled the door down.

            Taylor began pleading with Powell
not to shoot him, but Powell pointed the gun at Taylor and pulled the trigger. 
When the gun did not fire, Taylor ran toward the back of another squad car,
hoping that the door might be unlocked and he would be able to get a shotgun
out of it.  When he got to the rear of the squad car, Powell yelled at him to
stop or he would shoot.  Taylor hesitated and looked at Powell, who was still
pointing the gun at Taylor and pulled the trigger again.  Taylor then ran around
the squad car, and Powell pulled the trigger once more.  The third time, Powell
was using both hands to try to fire the gun.  Taylor said that he was in fear
of imminent bodily injury and that Powell clearly intended to kill him each
time he pulled the trigger.

When the gun did not fire on the third
try, Powell started fumbling with the gun and the magazine fell out.  While Powell
was trying to put the magazine back in the gun, Taylor ran to the back door and
was able to close and bolt it.  He then locked himself in his office with a
loaded shotgun and called 9-1-1.  Deputies from the Ellis County Sheriff’s
Department arrived shortly thereafter, and a SWAT team searched the building,
but Powell was not found.  Taylor never recovered his pistol, and Officer
Boudreau testified that, after that day, she never again saw him with the
pistol.

            Taylor identified Powell at
trial as the person who broke in and tried to shoot him.  Taylor stated that
the building was not open to the public at 5:30 a.m. and that Powell did not
have consent to enter the building that morning.  The door that was kicked in
had a wooden box attached to it where people would place payments on the
weekends when city hall was not open.  Taylor said that people often get paid
on Fridays and pay their utilities over the weekend.

Robert Allwardt and Mike Aman, investigators
with the Ellis County District Attorney’s office, testified that they responded
to the scene.  Allwardt stated that, among other things, he talked to Taylor
and took fingerprints from the areas that Powell might have touched at the
scene, but none of the fingerprints collected were identified as belonging to
Powell.  Both Allwardt and Aman also testified that they did not know why the
Ellis County Sheriff’s Department did not conduct the investigation.

The next day, Allwardt went to Powell’s
last known address.  There, he met the manager of the residence and confirmed
that Powell had, in fact, resided there.  Allwardt then discovered some papers
that were identified to be Powell’s next to a computer in the common area.  The
Maypearl City Hall address was written in the lower right-hand corner of one of
the papers.  The manager of the residence acknowledged that the paper was at
Powell’s residence at a computer that he had access to, but he could not say
with certainty that the paper with the address was Powell’s because four men
had access to the notepad where the address was written.     

            Texas Ranger Danny Briley
testified that after observing the scene, discussing the events with the other
investigators, and talking with Taylor, he obtained an arrest warrant for
Powell.  Powell was arrested, and Briley then interviewed him.  Powell gave a
written statement in which he admitted kicking in the door, but, contrary to
Taylor’s testimony, he stated that he ran away when Taylor tried to open the
bay door.  Powell’s written statement does not discuss Taylor’s accusation that
Powell took Taylor’s gun and tried to shoot Taylor.  On cross-examination,
Briley additionally stated that he remembered another discussion with Powell:

Gretchon told me that he needed some
weed.  He needed a hookup, and that he would be paid some money, have X amount
of dollars if he would go kick in the door to the Maypearl Police Department,
but that once he busted the door down, his part was done.

 

Powell told Briley there were two
accomplices, Little C and Little Cousin.  

            The defense presented the
testimony of two investigators from the Ellis County Sheriff’s Office.  Jason
Westmoreland testified that he was initially assigned to begin an investigation
into what happened at the Maypearl Police Department.  However, later that day,
his lieutenant advised him “per the sheriff” that he was not to conduct any
further investigation.  He heard from deputies talking at the scene that the
sheriff did not want to be involved because he thought there was something
strange about the way the situation had “gone down” and he wanted an outside
agency to investigate it.  On cross-examination, Westmoreland acknowledged that
he had not talked to the sheriff about it and agreed that “a bunch of deputies
[were] shooting their mouths off” and there was not any truth to any of it. 
Phillip Slaughter, the other investigator, testified that he initially
responded to the scene at the Maypearl Police Department but was later ordered
to leave the scene by the sheriff.

            In his first issue, Powell
contends that the evidence is insufficient to support his conviction for
burglary of a building.  A person commits the offense of burglary of a building
if, without the effective consent of the owner, the person enters a building
not then open to the public, with intent to commit theft.  Tex. Penal Code Ann. § 30.02(a)(1) (Vernon
2003).

Powell first argues that the evidence is
insufficient because, although he may have broken down the door to the building
and committed criminal mischief, he did not enter the building.  Instead,
Powell claims that Taylor ordered him into the building.  However, Taylor
testified that “the front door flung open and a black male entered.”  The jury
obviously believed Taylor’s testimony over Powell’s written statement, and we
are required to defer to the jury’s credibility and weight determinations
because the jury is the sole judge of the witnesses’ credibility and the weight
to be given their testimony.  See Jackson, 443 U.S. at 326, 99 S.Ct. at
2793.

Powell next argues that the evidence is
insufficient to establish that he intended to commit theft because it is “mere
conjecture by the State that Appellant intended to rob the cash from the night
deposit box which [w]as mounted on the back of the door.”  However, in a
prosecution for burglary, the specific intent to commit theft may be inferred
from the circumstances.  Goodeaux v. State, 269 S.W.3d 730, 734 (Tex.
App.—Beaumont 2008, no pet.) (citing Simmons v. State, 590 S.W.2d 137,
138 (Tex. Crim. App. 1979)).  Here, in addition to Taylor’s testimony that
people often pay their utilities over the weekend, that the offense occurred
early Monday morning, and that the lockbox where people would place their
payments was on the back of the door that Powell kicked in, Powell admitted in
his written statement that, before kicking in the front door, he had looked in
the windows on the back side of the building and did not see anyone in the
building.  Taylor also testified that entry was made without consent at about
5:30 a.m.  See Mauldin v. State, 628 S.W.2d 793, 795 (Tex. Crim. App.
1982) (“[A]n entry made without consent in the nighttime is presumed to have
been made with intent to commit theft.”).  The jury could have reasonably
inferred Powell’s intent to commit theft.

Viewing all the evidence in the light
most favorable to the verdict, we conclude that the evidence is sufficient to
support Powell’s conviction for burglary of a building with intent to commit
theft.[2] 
We overrule Powell’s first issue.

In his second issue, Powell contends
that the evidence is insufficient to support his conviction for aggravated
assault on a public servant.  A person commits the offense of aggravated assault
of a public servant if he intentionally or knowingly threatens a person that
the actor knows to be a public servant with imminent bodily injury while the
public servant is lawfully discharging an official duty and uses or exhibits a
deadly weapon during the commission of the assault.  See Tex. Penal Code Ann. §§ 22.01(a)(2),
22.02(a)(2), (b)(2)(B) (Vernon Supp. 2010).

Powell argues that the evidence is
insufficient because Taylor’s version of events is “incredulous” and points
instead to the testimony presented by the defense witnesses, which he claims
establishes that the sheriff of Ellis County thought that something was not as
it seemed.  In his pro se reply brief, Powell argues that the jury was
presented with contradictory and false evidence and that Taylor’s version of
the events is “unreasonable and irrational.”  However, by finding Powell
guilty, the jury obviously believed Taylor’s testimony.  The jury is the
exclusive judge of the facts, the credibility of the witnesses, and the weight to
be given to the witnesses’ testimony.  Jaggers v. State, 125 S.W.3d 661,
672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (citing Penagraph v.
State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)).  A jury may believe
all, some, or none of any witness’s testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).  As the reviewing court, we “should not
substantially intrude upon the jury’s role as the sole judge of the weight and
credibility of witness testimony.”  Vasquez v. State, 67 S.W.3d 229, 236
(Tex. Crim. App. 2002); see also Sharp, 707 S.W.2d at 614.  We must
defer to the jury’s determination concerning what weight to give any
contradictory testimonial evidence.  See, e.g., In re A.B., 133
S.W.3d 869, 873-74 (Tex. App.—Dallas 2004, no pet.); Scugoza v. State,
949 S.W.2d 360, 362-63 (Tex. App.—San Antonio 1997, no pet.); Fetterolf v.
State, 782 S.W.2d 927, 933 (Tex. App.—Houston [14th Dist.] 1989, pet.
ref’d).

Viewing all the evidence in the light
most favorable to the verdict, we conclude that the evidence is sufficient to
support Powell’s conviction for aggravated assault of a public servant.  We
overrule Powell’s second issue.

Having overruled Powell’s issues, we
affirm the trial court’s judgments.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Davis, and

Judge Anderson[3]

(Chief Justice Gray concurs with a
note)*

Affirmed

Opinion
delivered and filed June 8, 2011

Do
not publish

[CRPM]

 

            *(Chief
Justice Gray concurs in the judgment affirming Powell’s convictions.  A
separate opinion will not issue.  He notes, however, that he finds no reason,
much less an “interest of justice” that would require this court to consider
the pro se reply brief of Powell when Powell is ably represented by appointed
counsel.  He notes that by referencing and considering the pro se brief we
encourage the practice of unauthorized hybrid representation.)









[1] Powell, who is represented by counsel,
filed a pro se reply brief.  A criminal appellant has no right to hybrid
representation.  Ex parte Taylor, 36 S.W.3d 883, 887 (Tex. Crim. App.
2001).  Generally, when an appellant has counsel and counsel has filed a brief,
the appellant has no right to file a pro se brief.  This prohibition on
hybrid representation is not absolute.  See, e. g., Warren v. State, 98 S.W.3d
739, 741 (Tex. App.—Waco 2003, pet. ref’d).  We may consider a pro se
brief if the interests of justice require us to do so.  Powell’s pro se brief
replies to the State’s brief and discusses the sufficiency complaints.  We will
thus consider it in deciding this appeal.  





[2] Flores v. State, 902 S.W.2d 618
(Tex. App.—Austin 1995, pet. ref’d), relied on by Powell, is inapplicable here. 
In Flores, the appellant was convicted of burglary of a building under
section 30.02(a)(3) of the penal code, and the appellate court held that the
evidence was insufficient to prove that he “attempted to commit theft.”  In
this case, however, Powell was convicted of burglary of a building with intent
to commit theft under section 30.02(a)(1) of the penal code.  Thus, the Flores
court did not address the issue before us.  The Flores court even
stated:  “A much closer question would be presented in the present cause had
the prosecution been for burglary with intent to commit theft, section
30.02(a)(1); however appellant was not charged under that part of the statute.”
 Id. at 620.





[3] Ken Anderson, Judge of the 277th
District Court of Williamson County, sitting by assignment of the Chief Justice
of the Texas Supreme Court pursuant to Section 74.003(h) of the Government
Code.  See Tex. Gov’t Code
Ann. § 74.003(h) (Vernon 2005).