

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00058-CR

**SAMMIE RAY HOLBERT,**

           **Appellant**

 **v.**

**THE STATE OF TEXAS,**

           **Appellee**

---

**From the 18th District Court
Johnson County, Texas
Trial Court No. F40381**

---

## MEMORANDUM  OPINION

---

A jury found Sammie Ray Holbert guilty of two counts of aggravated sexual assault of a child and four counts of indecency with a child. The jury assessed his punishment, enhanced by a prior felony conviction, at life imprisonment and a $10,000 fine for each count of aggravated sexual assault of a child and life imprisonment and a $3,000 fine for each count of indecency with a child. The trial court ordered Holbert's sentences for counts one, two, and three to run consecutively and his sentences for

counts four, five, and six to run concurrently with his sentence for count one. In three issues, Holbert appeals. We will affirm.

We begin with Holbert's second and third issues in which he contends that the evidence is legally and factually insufficient to support his convictions.

The court of criminal appeals recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). Accordingly, we will apply the same standard of review to each of Holbert's sufficiency complaints.

When reviewing a challenge to the sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Section 22.021(a) of the penal code provides, in relevant part, that a person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly "causes the sexual organ of a child to contact . . . the . . . sexual organ of another person, including the actor," and the victim is younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (Vernon Supp. 2010). Section 21.11(a) provides, in relevant part, that a person commits the offense of indecency with a child if he engages in sexual contact with a child younger than seventeen years of age who is not his spouse. *Id.* § 21.11(a)(1), (b-1) (Vernon Supp. 2010). "Sexual contact" means "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" "if committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1). The requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, remarks, and all surrounding circumstances. *Breckenridge v. State*, 40 S.W.3d 118, 128 (Tex. App.—San Antonio 2000, pet. ref'd) (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981)). A child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault of a child or indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon 2005); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

To prove counts one and two as set forth in the charge, the State was required to establish beyond a reasonable doubt that, on or about November 1, 2005, and December 1, 2005, in Johnson County, Texas, Holbert "intentionally or knowingly cause[d] the

sexual organ of [M.S.], a child who was then and there younger than 14 years of age and not the spouse of the defendant, to contact the sexual organ of the defendant." To prove counts three and four as set forth in the charge, the State was required to establish beyond a reasonable doubt that, on or about November 1, 2005, and December 1, 2005, in Johnson County, Texas, Holbert "intentionally or knowingly, with the intent to arouse or gratify the sexual desire of said defendant, engage[d] in sexual contact by touching any part of the genitals of [M.S.], a child younger than 17 years of age and not the spouse of the defendant." To prove counts five and six as set forth in the charge, the State was required to establish beyond a reasonable doubt that, on or about November 1, 2005, and December 1, 2005, in Johnson County, Texas, Holbert "intentionally or knowingly, with the intent to arouse or gratify the sexual desire of said defendant, engage[d] in sexual contact with [M.S.], a child younger than 17 years of age and not the spouse of the defendant, by touching the breast of [M.S.]."

M.S. testified that her mother began dating Holbert in August 2005. Shortly thereafter, Holbert and her mother married, and he moved into their home in Cleburne. One day at the beginning of November 2005, about a month after Holbert had moved in, M.S. found herself alone in the house with Holbert. Holbert offered to give M.S. a massage in his bedroom. At first, Holbert massaged M.S.'s shoulders and feet, but then, he began working his hand up her leg and touched her vagina with his fingers. M.S. was "frozen and speechless." Holbert then touched her breasts with his hands, and Holbert and M.S. then had sexual intercourse. M.S. stated that, during November and December 2005, they had sexual intercourse six or more times and that he touched her

vagina and breasts with his hand on more than one occasion. Throughout this time, M.S. was only twelve years old.

M.S.'s mother testified that in May 2006, she and M.S. had a conversation in which M.S. told her that Holbert "had gave [sic] her a shoulder rub and that they were having sex in my bedroom." M.S. also told her that Holbert "would rub on her breasts." Donna Wright, a pediatric nurse practitioner and nurse manager for the Child Advocacy Resource and Evaluation Team (the CARE Team) at Cook Children's Medical Center in Fort Worth, testified that she then examined M.S. in June 2006. M.S. told her that when she was twelve years old, Holbert had had sex with her in her mom's room while her mom was at work. M.S. also stated that Holbert had "rubbed on her vagina" and touched or fondled her breasts. She said that it happened six times, the last time being in December 2005.

Holbert testified that he believed M.S.'s mother had called on one occasion and he told her that he was going to rub some Aspercreme on M.S.'s shoulder because she had hurt it but that he had never had any sexual contact with M.S. He stated that it was "impossible" to be alone with any child in the house because there were so many people living there. He said that he has children and thus would never do anything to hurt a child. He also has a family that he loves very much and would never do anything like this to shame his or his family's name.

Holbert argues that the evidence is insufficient because "[t]he record is completely devoid of any sufficient details regarding any of the allegation [sic] to which the Appellant is charged" and "[a]ny testimony regarding this incident is contradicted

by statements elsewhere in the record such as whether or not other persons were present in the home, lotions being used or not used, [and] where and when any of these crimes allegedly occurred." By finding Holbert guilty, the jury obviously believed M.S.'s testimony and did not believe Holbert's testimony. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). A jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *see also Sharp*, 707 S.W.2d at 614. We must defer to the jury's determination concerning what weight to give the contradictory testimonial evidence. *See, e.g.*, *In re A.B.*, 133 S.W.3d 869, 873-74 (Tex. App.—Dallas 2004, no pet.); *Scugoza v. State*, 949 S.W.2d 360, 362-63 (Tex. App.—San Antonio 1997, no pet.); *Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd).

Viewing all the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Holbert's convictions. We overrule Holbert's second and third issues.

We now turn to Holbert's first issue, in which he contends that he did not receive effective assistance of counsel as guaranteed by the United States and Texas constitutions.

To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same). Under *Strickland*, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Wiggins,* 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews,* 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Id.* There is a strong presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). To overcome the presumption of reasonably professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (citing

*Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Holbert first claims that his trial counsel provided ineffective assistance because he introduced into evidence letters that M.S.'s mother had written to Holbert while Holbert was confined in the county jail before trial. During his cross-examination of M.S.'s mother, defense counsel introduced the letters and highlighted the fact that, throughout the letters, M.S.'s mother repeatedly asks for a divorce but made only one brief reference in one letter about the allegations in this case. However, when defense counsel asked M.S.'s mother why she never addressed the allegations in the letters, she stated that a caseworker at the Child Advocacy Center told her not to talk about it. On redirect, the State then pointed to several portions of the letters, and M.S.'s mother explained that they were subtle references to the allegations. The State also asked M.S.'s mother what she meant when she wrote, "I was your wife and you had came [sic] to me and talked about things that your mother did to you." M.S.'s mother replied that Holbert made the inference to her that he had been sexually molested by his mother.

Holbert argues that there could have been no reasonable trial strategy for introducing the letters because they contain highly prejudicial statements that bolstered the case against him, opened the door to extraneous acts that would otherwise be inadmissible, set him up for impeachment by the State, and diminished his credibility in

front of the jury. Defense counsel indicated in his opening statement that he intended to introduce evidence, including the letters, that suggested that the allegations against Holbert were "concocted." When we look at the record as a whole, we cannot conclude that no reasonable attorney would have adopted this strategy. Without additional evidence regarding trial counsel's strategic intent, we must presume that trial counsel introduced the letters as part of a valid trial strategy. *See Salinas*, 163 S.W.3d at 740; *Gamble*, 916 S.W.2d at 93.

Second, Holbert claims that his trial counsel provided ineffective assistance because he failed to object and to request a limiting instruction when: (1) M.S. testified during the State's direct examination of her that she and Holbert had engaged in oral sex on a few occasions; (2) the State impeached Holbert's credibility by questioning him about the details of his prior convictions, including the prior felony used to enhance punishment; and (3) the State questioned Holbert during its cross-examination of him about having eight children with six different women out of wedlock. But the record is silent as to defense counsel's reasons for not objecting to this testimony. Without such evidence, we must conclude that Holbert has not overcome the presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740; *Stults*, 23 S.W.3d at 208.

Third, Holbert claims that his trial counsel provided ineffective assistance because he failed to object to the following prejudicial hearsay evidence introduced by the State: (1) a Valentine's Day card/letter that M.S.'s mother testified was written by Holbert to M.S.; (2) another Valentine's Day card/letter that M.S. testified was written

by Holbert to her; and (3) Detective Don Beeson's testimony concerning statements M.S. made during the forensic interview at the Child Advocacy Center. The Valentine's Day cards/letters written by Holbert were not hearsay because they were admissions by a party-opponent. *See* TEX. R. EVID. 801(e)(2)(A); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). Furthermore, Holbert has provided no evidence regarding defense counsel's reasons for not objecting to any of this testimony. Without such evidence, we are unable to conclude that trial counsel's performance was deficient. *See Salinas*, 163 S.W.3d at 740; *Gamble*, 916 S.W.2d at 93.

Fourth, Holbert claims that his trial counsel provided ineffective assistance because he failed to elicit testimony to rebut or explain medical evidence offered by the State regarding a sexually transmitted disease of the alleged victim, and, fifth, Holbert claims that his trial counsel provided ineffective assistance because he failed to adequately make an offer of proof regarding a defensive theory of the case. However, the record is again silent as to defense counsel's reasons for his actions and decisions. To conclude that trial counsel was ineffective based on either of these asserted grounds would call for speculation, which we will not do. *See Jackson*, 877 S.W.2d at 771; *Gamble*, 916 S.W.2d at 93. Without such evidence, we must conclude that Holbert has not overcome the presumption that counsel's decision to not elicit testimony about the victim's past sexual behavior was reasonably professional and motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740; *Gamble*, 916 S.W.2d at 93.

Lastly, Holbert claims that his trial counsel provided ineffective assistance because he "continually demonstrated a lack of knowledge and understanding of the

law." Specifically, Holbert points out that on several occasions after the State made an objection that the trial court sustained, his counsel asked the court to "note our exception" and then requested a mistrial, which was denied. Holbert also states that his counsel's request for a directed verdict was untimely. Again, the record is silent as to defense counsel's reasons for his actions and decisions; therefore, we are unable to conclude that trial counsel's performance was deficient. *See Salinas*, 163 S.W.3d at 740; *Gamble*, 916 S.W.2d at 93. Furthermore, we have already concluded that the evidence is sufficient to support Holbert's convictions; thus, there is no evidence in the record that Holbert's defense was prejudiced by these actions by counsel. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (stating that appellate issue complaining of trial court's failure to grant motion for directed verdict is treated as challenge to legal sufficiency of evidence).

We overrule Holbert's first issue and affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 4, 2011
Do not publish
[CRPM]